UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROSEMARIE OZBAKIR and ALI DEMIR,

                              Plaintiffs,

      v.

DANIEL J. SCOTTI, JR., MARCUS & MILLICHAP REAL
ESTATE INVESTMENT BROKERAGE COMPANY, GLEN
KUNOFSKY, ANDREW R. DORF, SCOTT DRAGOS, CHRIS
ZORBAS, PGP VALUATION, INC., BRUCE D. COLEMAN,
SOVEREIGN JF, LLC, SOVEREIGN JF, SPE MANAGER,
INC., EUREKA PETROLEUM, INC., TIBAROM, INC.,
ROCHESTER LUBE, LLC, SAMUEL E. PEARSON, III,
DEBORAH PICKETT, and PAUL MORABITO,

                              Defendants.

Case No.
6:09-CV-06460 (DGL)


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT BY
DEFENDANTS SOVEREIGN JF, LLC AND SOVEREIGN JF, SPE MANAGER, INC.**


NIXON PEABODY LLP
Carolyn G. Nussbaum
1100 Clinton Square
Rochester, New York 14604
(585) 263-1000


KEKER & VAN NEST LLP
Daniel Purcell
Dan Jackson
710 Sansome Street
San Francisco, California  94111
(415) 391-5400

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II. PLAINTIFFS' FACTUAL ALLEGATIONS.......................................................2

    A.    Plaintiffs' conspiracy theory in general. .................................................2

    B.    Plaintiffs' allegations and claims against the Sovereign defendants. ......................5

III. ARGUMENT .........................................................................................................6

    A.    Plaintiffs' contract and quasi-contract claims against the Sovereign defendants fail.........................................................................................8

        1.    Plaintiffs' contractual claims fail because they had no contract with either of the Sovereign defendants, and plaintiffs do not and cannot allege any factual basis for their alter-ego conclusions.....................................................................................8

            a.    Plaintiffs' own documents and allegations show that defendant Scotti, not Sovereign JF, LLC, sold the Premises and the Lease to plaintiffs................................9

            b.    Plaintiffs' conclusory alter-ego allegations are no basis to hold the Sovereign defendants liable for breach of contract (or anything else). ..........................................10

        2.    Plaintiffs' quasi-contractual claims fail because of the admitted existence of contracts—including the Lease that forms the purported basis for eight of plaintiffs' claims—concerning the same subject matter...............................................................11

    B.    Plaintiffs' tort claims—for negligent misrepresentation, deceptive acts (§ 349), RICO violations, and fraud—also fail......................................12

        1.    Plaintiffs' claims for fraud, RICO violations, and negligent misrepresentation fail under Rule 9(b). ......................................12

        2.    All of plaintiffs' tort claims fail under New York's economic loss rule. ..............................................................................13

        3.    All of plaintiffs' tort claims fail because plaintiffs do not and cannot allege proximate causation. ..........................................14

            a.    Plaintiffs expressly disclaimed reliance.........................................15

    b.  Any allegation of proximate causation is fatally implausible in light of the recession, which is a far more likely cause of plaintiffs' alleged injuries..............................16

  4.  Plaintiffs have not stated a RICO claim....................................................19

    a.  Plaintiffs have not even purported to allege claims under sections 1962(a) or (b), notwithstanding the contrary assertion in their RICO Case Statement. ........................19

    b.  Neither the complaint nor the RICO Case Statement alleges a pattern of mail or wire fraud to support a claim under section 1962(c)...........................................................20

    c.  Plaintiffs have not alleged that each defendant conducted the affairs of the alleged enterprise, as required to state a section 1962(c) claim. ......................................22

    d.  Plaintiffs admit that their RICO allegations fail the "distinctness" requirement under section 1962(c). ......................23

    e.  Plaintiffs have not alleged a RICO conspiracy claim under section 1962(d). .................................................................23

  5.  Plaintiffs' claims for negligent misrepresentation and deceptive practices fail for additional, independent reasons.....................................24

IV. CONCLUSION...............................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Acito v. IMCERA Group*
  47 F.3d 47 (2d Cir. 1995) .........................................................................................12

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*
  404 F.3d 566 (2d Cir. 2005) ......................................................................................12

*Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*
  2009 U.S. Dist. LEXIS 64924 (S.D.N.Y. July 23, 2009) .........................................11

*Allen v. New World Coffee, Inc.*
  2001 U.S. Dist. LEXIS 3269 (S.D.N.Y. March 27, 2001) ........................................23

*Apace Commc'ns, Ltd. v. Burke*
  522 F. Supp. 2d 512 (W.D.N.Y. 2007) (Larimer, J.)...................................10, 12, 13

*Ashcroft v. Iqbal*
  129 S. Ct. 1937 (2009)...................................................................................... *passim*

*Atl. Gypsum Co. v. Lloyds Int'l Corp.*
  753 F. Supp. 505 (S.D.N.Y. 1990) ............................................................................20

*Bastian v. Petren Resources Corp.*
  892 F.2d 680 (7th Cir. 1990) .........................................................................16, 17, 18

*Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*
  129 F. Supp. 2d 578 (W.D.N.Y. 2000)......................................................................14

*Belin v. Weissler*
  1998 U.S. Dist. LEXIS 10492 (S.D.N.Y. 1998)........................................................15

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007).............................................................................................1, 6, 7

*Bibeault v. Advanced Health Corp.*
  97 Civ. 6026, 2002 U.S. Dist. LEXIS 225 (S.D.N.Y. Jan. 8, 2002).........................15

*Biggs v. Eaglewood Mortgage, LLC*
  No. PJM 07-2768, 2009 U.S. Dist. LEXIS 62275 (D. Md. Jan. 5, 2009) .................15

*Bridge v. Phoenix Bond & Indem. Co.*
  128 S. Ct. 2131 (2008)...............................................................................................15

*Bridgestone/Firestone v. Recovery Credit Servs.*
  98 F.3d 13 (2d Cir. 1996) ..........................................................................................14

*Brown v. N.Y. City Hous. Auth.*
  2006 U.S. Dist. LEXIS 30193 (S.D.N.Y. May 17, 2006) .....................................7, 10

*Carmania Corp. v. Hambrecht Terrell Int'l*
  705 F. Supp. 936 (S.D.N.Y. 1989) ............................................................................13

*Cedric Kushner Promotions, Ltd. v. King*
   533 U.S. 158 (2001) ................................................................22

*Chavin v. McKelvey*
   25 F. Supp. 2d 231 (S.D.N.Y. 1998) ...................................15

*Citibank, N.A. v. K-H Corp.*
   968 F.2d 1489 (2d Cir. 1992) ...............................................14

*City of New York v. Smokes-Spirits.com, Inc.*
   541 F.3d 425 (2d Cir. 2008) .................................................23

*Clover Pool Supply Co. v. Cent. NY News, Inc.*
   2006 U.S. Dist. LEXIS 83987 (W.D.N.Y. November 17, 2006) ...............24

*County of Suffolk v. Long Island Lighting Co.*
   728 F.2d 52 (2d Cir. 1984) ...................................................13

*Cruickshank & Co. v. Bhicajee*
   765 F.2d 20 (2d Cir. 1985) .....................................................8

*Daly v. Llanes*
   30 F. Supp. 2d 407 (S.D.N.Y. 1998) ...................................12

*De Jesus v. Sears, Roebuck & Co.*
   87 F.3d 65 (2d Cir. 1996) .....................................................10

*Dietrich v. Bauer*
   76 F. Supp. 2d 312 (S.D.N.Y. 1999) ...................................22

*Diversified Carting, Inc. v. City of New York*
   2006 U.S. Dist. LEXIS 1701 (S.D.N.Y. Jan. 20, 2006) ..............11, 12

*Dungan v. Acad. at Ivy Ridge*
   No. 06-CV-0908, 2008 U.S. Dist. LEXIS 56757 (N.D.N.Y. July 21,
   2008) ................................................................................15

*First Nationwide Bank v. Gelt Funding Corp.*
   27 F.3d 763 (2d Cir. 1994) .............................................16, 17, 18

*Foxley v. Sotheby's Inc.*
   893 F. Supp. 1224 (S.D.N.Y. 1995) ...................................11

*G&G TIC, LLC v. Alabama Controls, Inc.*
   No. 4:07-CV-162, 2008 U.S. Dist. LEXIS 75269 (M.D. Ga. Sept. 29,
   2008) ................................................................................15

*H. J. Inc. v. Nw. Bell Tel. Co.*
   492 U.S. 229 (1989)...........................................................20, 21

*Harsco Corp. v. Segui*
   91 F.3d 337 (2d Cir. 1996) ...................................................15

*Holmes v. Securities Investor Protection Corp.*
   503 U.S. 258 (1992)...........................................................14

*Hydro Investors, Inc. v. Trafalgar Power Inc.*
227 F.3d 8 (2d Cir. 2000) ...................................................................................13

*Indus. Bank v. Baltic Fin. Corp.*
93 Civ. 9032, 1994 U.S. Dist. LEXIS 8580, 1994 WL 286162
(S.D.N.Y. July 27, 1994) ...................................................................................22

*Int'l Customs Assocs. v. Ford Motor Co.*
893 F. Supp. 1251 (S.D.N.Y. 1995) ....................................................................8

*Law Debenture v. Maverick Tube Corp.*
2008 U.S. Dist. LEXIS 87438 (S.D.N.Y. March 5, 2007) ......................................12

*Lerner v. Fleet Bank, N.A.*
459 F.3d 273 (2d Cir. 2006) ......................................................................7, 12, 18

*Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.*
No. 07-5423, 2009 U.S. Dist. LEXIS 74382 (E.D. Pa. Aug. 20, 2009) .........16, 17, 18

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*
244 F.R.D. 204 (S.D.N.Y. 2007) .........................................................................13

*Mark v. J.I. Racing*
1997 U.S. Dist. LEXIS 9931 (E.D.N.Y. July 9, 1997)............................................19

*McDowell Research Corp. v. Tactical Support Equip., Inc.*
No. 08-CV-6499, 2009 WL 2901594 (W.D.N.Y. Nov. 4, 2009)
(Telesca, J.) .....................................................................................................14

*McGee v. State Farm Mut. Auto. Ins. Co.*
No. 08-CV-392, 2009 U.S. Dist. LEXIS 60229 (E.D.N.Y. July 14,
2009) ...............................................................................................................15

*Mills v. Polar Molecular Corp.*
12 F.3d 1170 (2d Cir. 1993) ..............................................................................12

*Miranda v. Ponce Fed. Bank*
948 F.2d 41 (1st Cir. 1991)................................................................................19

*Orlando v. Novurania of Am., Inc.*
162 F. Supp. 2d 220 (S.D.N.Y. 2001) ................................................................13

*Ouaknine v. MacFarlane*
897 F.2d 75 (2d Cir. 1990) ................................................................................19

*Piccoli A/S v. Calvin Klein Jeanswear Co.*
19 F. Supp. 2d 157 (S.D.N.Y. 1998) ..................................................................8, 9

*Revak v. SEC Realty Corp.*
18 F.3d 81 (2d. Cir. 1994) .................................................................................14

*Reves v. Ernst & Young*
507 U.S. 170 (1993).........................................................................................22

*Sedima, S.P.R.L. v. IMREX Co.*
473 U.S. 479 (1985).........................................................................................20

*Shred-It USA, Inc. v. Mobile Data Shred*
  222 F. Supp. 2d 376 (S.D.N.Y. 2002) ................................................13

*Stewart v. Jackson & Nash*
  976 F.2d 86 (2d Cir. 1992) ...............................................................23

*Thyssen, Inc. v. Calypso Shipping Corp.*
  310 F. 3d 102 (2d Cir. 2002) .............................................................4

*United States v. Private Sanitation Indus. Ass'n*
  793 F. Supp. 1114 (S.D.N.Y. 1992) ..................................................21

*Warner Theatre Assocs. Ltd. v. Metro. Life Ins. Co.*
  149 F.3d 134 (2d Cir. 1998) (Winter, J., affirming Sotomayor, J.)...................15, 16

*Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A.*
  247 F. Supp. 2d 352 (S.D.N.Y. 2002) ...............................................15

*Wexner v. First Manhattan Co.*
  902 F.2d 169 (2d Cir. 1990) ...........................................................7, 12

*Wiener v. Napoli*
  760 F. Supp. 278 (E.D.N.Y. 1991) ...........................................20, 21, 22

### State Cases

*City of New York v. Smokes-Spirits.com*
  12 N.Y.3d 616 (2009) ......................................................................14

*Danann Realty Corp. v. Harris*
  5 N.Y.2d 317 (1959) ...................................................................15, 16

*Lakeville Pace Mech., Inc. v. Elmar Realty Corp.*
  714 N.Y.S.2d 338 (2000) ...................................................................8

*Sheth v. New York Life Ins. Co.*
  709 N.Y.S.2d 74 (2000)...................................................................24

*Stutman v. Chemical Bank*
  95 N.Y.2d 24 (2000).......................................................................15

*Village of Webster v. Monroe County Water Auth.*
  703 N.Y.S.2d 648 (2000).................................................................8, 9

### Federal Statutes

18 U.S.C. § 1962................................................................................6

18 U.S.C. §§ 1962(a) and (b)...................................................19, 20

18 U.S.C. § 1962(c) .......................................................20, 22, 23

18 U.S.C § 1962(d).........................................................................23

### State Statutes

New York General Business Law § 349.........................................*passim*

## Federal Rules

Fed. R. Civ. P. 8.................................................................................................6, 7, 8, 13

Fed. R. Civ. P. 9(b) ..............................................................................................1, 18, 20

Fed. R. Civ. P. 12(b)(6)...........................................................................................8, 24

## I.     INTRODUCTION

Plaintiffs' claims against Sovereign JF, LLC and Sovereign JF, SPE Manager, Inc. would fail under any pleading standard—they contradict the contractual documents on which they purport to be based and contravene settled law.  But they certainly cannot survive under the Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), which reexamined and clarified federal pleading standards.  *Twombly* and *Iqbal* make clear that a complaint can survive a motion to dismiss only where it sets forth factual allegations (as opposed to conclusions) that state a plausible (not merely conceivable) claim for relief.  Plaintiffs' claims against the Sovereign defendants are conclusory and implausible and cannot pass muster under the *Twombly/Iqbal* standard, much less the even more stringent standards of Rule 9(b) that apply to their fraud-based claims.

The essence of plaintiffs' complaint is that they bought property from defendant Daniel J. Scotti expecting to receive rent payments from the tenants, defendants Eureka Petroleum, Inc. and Tibarom, Inc. (the "Tenants").  And, indeed, they did receive the full, agreed-upon rent for nearly two years.  Then, in the last quarter of 2007—at the same time the entire United States entered its worst economic downturn since the Great Depression—the Tenants stopped paying rent.  Understandably, plaintiffs have sued the Tenants for breach of the lease agreement.  But they also bring contract, quasi-contract, and tort claims against the Sovereign defendants, despite plaintiffs' own admissions that the Sovereign defendants didn't sell them the property at issue, aren't the tenants on the lease, and never had a contractual or any other kind of relationship with the plaintiffs.  The Sovereign defendants' only alleged connection to the property is that—long before plaintiffs had ever heard of the property and *sixteen months* before plaintiffs bought it—they sold the property and the lease to another investor, who then resold to plaintiffs.

To the extent plaintiffs allege any connection between the Sovereign defendants and the transaction at issue, it is found in their conclusory claim that the Sovereign defendants are the alter egos of the Tenants' CEO and President, Paul Morabito.  Plaintiffs do not allege any facts

to support that conclusion, which this Court must disregard under *Iqbal*. Nor could they allege supporting facts, because Morabito has never played any ownership or management role in either Sovereign entity. Plaintiffs also appear to claim the Sovereign defendants somehow continued to own the property and lease after selling both. Not only is that assertion nonsensical on its own terms, it is disproven by the documents plaintiffs attach to their complaint, which show that the Sovereign defendants sold the property and lease sixteen months before plaintiffs bought them.

For these fundamental reasons, and many more explained in detail below, this Court should dismiss all of plaintiffs' claims against the Sovereign defendants.

## II.    PLAINTIFFS' FACTUAL ALLEGATIONS[1]

### A.    Plaintiffs' conspiracy theory in general.

The basic theory of plaintiffs' complaint is that the sixteen named defendants and others conspired to sell plaintiffs a property (the "Premises") for an artificially inflated price by means of a "sham" lease (the "Lease") that the Tenants supposedly had no intention of honoring.

Plaintiffs first allege a sale-leaseback transaction that took place on April 29, 2004. *See* ¶¶ 57-60; Exs. A-D. In that transaction, defendant Bruce D. Coleman allegedly bought the Premises for $839,531, and simultaneously sold it for $1,122,140 to defendant Rochester Lube, LLC, agent for Tibarom. ¶¶ 57-58; Exs. A-B. Rochester Lube, in turn, sold the Premises to defendant Sovereign JF, LLC for $1,180,620. ¶ 59; Ex. C. At the same time, Sovereign JF, LLC leased the Premises back to the Tenants under the Lease. ¶ 60; Ex. D. The Tenants operated a Jiffy Lube franchise on the Premises. *See* ¶ 19.

Three months later, on or about July 21, 2004, Sovereign JF, LLC sold the Premises, along with the Lease, to defendant Daniel J. Scotti for $1,324,529. ¶ 61; Ex. E. That ended,

---

[1]    For purposes of this motion only, the Sovereign defendants accept as true those very few allegations that are not conclusory, facially implausible, and/or contradicted by documents attached to or relied upon in the complaint. We also set forth many of plaintiffs' conclusory allegations below, despite *Iqbal*'s holding that they should be disregarded, because to ignore all of plaintiffs' conclusory allegations at the outset would leave us with literally nothing to discuss. Except as indicated otherwise, citations to paragraphs and exhibits refer to the complaint.

once and for all, the Sovereign defendants' involvement with the Premises or the Lease—long before plaintiffs ever surfaced as potential buyers. Indeed, as described below, the allegations of the complaint and the documents attached to it show that the Sovereign defendants had nothing further to do with the Premises after selling them to Scotti, and that neither Sovereign defendant had any involvement with plaintiffs at any time. The Sovereign defendants set forth those allegations and describe those documents below to make clear their lack of involvement.

On December 9, 2004, nearly five months after the Sovereign entities sold the Premises, plaintiffs executed a Representation Agreement with defendant Marcus & Millichap Real Estate Investment Brokerage Company ("REIBC"). *See* ¶ 65; Ex. H. Plaintiffs allege that REIBC subsequently sent them materials discussing the Premises and allegedly describing the features of the Lease. ¶¶ 69-70. Every single page of those materials states that "***[t]his information has been secured from sources we believe to be reliable, but we make no representations or warranties, express or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies***." Ex. I (emphasis added).

Plaintiffs allege that, on or about October 26, 2005, defendant Scott Dragos of REIBC sent them a form Letter of Intent, which they executed. ¶ 85; Ex. J. That letter was an offer from defendant Eureka—not from the Sovereign defendants (or Scotti, who actually owned the property at that point)—to sell the Premises for $1,480,000. *Id.*

On or about November 1, 2005, plaintiffs received a Counter to Letter of Intent from Scotti (rather than Eureka), again with a purchase price of $1,480,000. ¶ 90; Ex. L. Plaintiffs signed the counteroffer on November 5. ¶ 91; Ex. L. Consistent with plaintiffs' original offer, they had the right to inspect the Premises and review due-diligence materials, including "Tenant financial information in Seller's possession," before being bound by any offer. Ex. L at 2. The due-diligence documents—including the Lease and tenant financials—were sent to plaintiffs on or about November 14, 2005. *See* Ex. P.

On November 20, 2005—a full ***sixteen months*** after the Sovereign defendants sold the

Premises and ceased having anything to do with them—plaintiffs signed a Purchase Agreement to buy the Premises for $1,480,000. ¶ 99; Ex. Q. Under that agreement, plaintiffs affirmed that "[i]t is understood and agreed that the Property is being sold 'as is'; that Buyer has, or will have prior to the Closing Date, inspected the Property; and that neither Seller nor Agent makes any representation or warranty as to the physical condition or value of the Property or its suitability for Buyer's intended use." *Id.* § 12. Plaintiffs specifically initialed that provision. *See id.*

Further, plaintiffs expressly confirmed that, in buying the Premises, they were not relying on any representations by anyone about the Premises, specifically including, among other things, any representations about the tenant's intent or ability to pay rent:

> Buyer and Seller acknowledge that, as except as otherwise expressly stated herein, Agent has not made any investigation, determination, warranty or representation with respect to any of the following: (a) *the financial condition or business prospects of any tenant, or such tenant's intent to continue or renew its tenancy in the Property*; (b) the legality of the present or any possible future use of the Property under any federal, state or local law; (c) pending or possible future action by any governmental entity or agency which may affect the Property; (d) the physical condition of the Property, including but not limited to, soil conditions, the structural integrity of the improvements, and the presence or absence of fungi or wood-destroying organisms; (e) *the accuracy or completeness of income and expense information and projections, of square footage figures, and of the texts of leases, options, and other agreements affecting the Property*; (f) the possibility that lease, options or other documents exist which affect or encumber the Property and which have not been provided or disclosed by Seller; or (g) the presence or location or any hazardous materials on or about the property…. *Buyer agrees that investigation and analysis of the foregoing matters is Buyer's sole responsibility and that Buyer shall not hold Agent responsible therefore. Buyer further agrees to reaffirm its acknowledgement of this disclaimer at close of escrow and to confirm that it has relied upon no representations of Agent in connection with its acquisition of the Property.*

*Id.* § 24 (emphases added).[2] Plaintiffs separately initialed this term as well.

Plaintiffs admit that the Tenants paid their full, agreed-upon rent on the Premises for

---

[2] The Purchase Agreement also provides that any dispute with respect to the Premises shall be settled by binding arbitration. Ex. Q § 25. Defendants reserve their right to compel arbitration and do not waive any such right by filing this motion to dismiss. *See, e.g.*, *Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F. 3d 102, 105 (2d Cir. 2002).

about a year, until December 2006.  ¶ 111.  Plaintiffs allege, on information and belief, that the Tenants then transferred their obligations under the Lease, without plaintiffs' consent, to non-parties DDS Management, LLC and Peanut Oil, LLC, and defendants Samuel E. Pearson, III and Deborah Pickett (the "Assignees").  ¶ 112.  Plaintiffs allege that the Assignees paid the rent for eight months, from December 2006 until August 2007.  ¶¶ 113-14.  In other words, plaintiffs admit that they received the full, agreed-upon rent under the Lease for close to two years following their purchase of the Premises.  ¶¶ 111-14.

Plaintiffs contend that, beginning in or around August 2007, the Assignees ceased paying rent, taxes and maintenance, before abandoning the Premises in or around December 2007.  ¶¶ 114-16.  This alleged default under the Lease occurred ***nearly four years*** after Sovereign sold the Premises and exited the picture.  Moreover, the Assignees' apparent decision to shut down their Jiffy Lube operation occurred at the same time the United States began its descent into its worst economic downturn since the Great Depression.  As explained by the exhibits to the accompanying Affidavit of Carolyn G. Nussbaum ("Aff.")—of which the Court can and should take judicial notice as shown in the Sovereign defendants' Memorandum in Support of their Request for Judicial Notice ("RJN")—it is well established that this recession began in the fourth quarter of 2007, and cut across all sectors of the economy, including retail business and commercial real estate.  *See* Aff. Exs. 1-9; RJN.

**B.    Plaintiffs' allegations and claims against the Sovereign defendants.**

Of the 324 paragraphs of the complaint, only 16 specifically reference the Sovereign defendants.  Each of those allegations falls into one of three categories: (1) innocuous statements introducing the Sovereign defendants and alleging that Sovereign JF, LLC bought the Premises from, and leased them back to, Rochester Lube and the Tenants, and then sold the Premises and the Lease to Scotti;[3] (2) conclusory allegations, contradicted by the documents attached to the complaint and plaintiffs' other allegations, that when plaintiffs bought the Premises and the

---

[3]  ¶¶ 11-12, 59-61.

Lease from Scotti, Sovereign JF, LLC was somehow still the lessor and/or owner;[4] and (3) conclusory—and false—allegations that the Sovereign defendants are alter egos of defendant Morabito (and each other).[5]  For ease of reference, all the allegations mentioning the Sovereign defendants are reproduced in the attached Appendix.

These insufficient allegations are the basis of plaintiffs' nine claims against the Sovereign defendants, which claims fall into three categories.  First are contract and quasi-contract claims for breach of contract (claim 3); breach of the covenant of good faith and fair dealing (claim 12); unjust enrichment (claim 13); and promissory estoppel (claim 14).  Second are tort claims for negligent misrepresentation (claim 8); deceptive acts or practices under New York General Business Law § 349 (claim 9); racketeering under 18 U.S.C. § 1962 (RICO) (claim 10); and fraud (claim 11).  Third is a "claim" for "tolling," which isn't a claim at all, but a response to an anticipated statute-of-limitations defense.

After defendants removed the case to this Court, plaintiffs served a RICO Case Statement pursuant to Local Rule 5.1(h).  *See* Pls.' RICO Case Statement ("RCS") (Docket Entry No. 8) (filed Oct. 14, 2009).  But plaintiffs' statement does not provide the detailed information Rule 5.1(h) requires.  Instead, it simply restates the complaint's conclusory allegations in another format.  Like their complaint, plaintiffs' RICO Case Statement contains no factual allegations to support a RICO claim against either of the Sovereign defendants.  *See id.*

### III.    ARGUMENT

Just a few months ago, in *Iqbal,* the Supreme Court confirmed that Federal Rule of Civil Procedure 8 requires district courts to scrutinize all complaints closely in response to motions to dismiss, and to reject complaints that are conclusory or implausible.  The *Iqbal* Court made clear that its previous decision in *Twombly* was not limited to antitrust cases, but instead "expounded the pleading standard for 'all civil actions.'"  *Iqbal*, 129 S. Ct. at 1953 (quoting Fed. R. Civ.

---

[4]  ¶¶ 107, 158, 177-78.

[5]  ¶¶ 138-39, 144-46, 150, 176.

P. 1).  The Court then explained the two basic principles underlying the proper analysis under Rule 8.  First, although district courts must accept a complaint's factual allegations as true, bare legal conclusions are entitled to no deference.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 1949.  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 1950.  Applying these principles, the Court in *Iqbal* established a two-step process for evaluating whether a complaint satisfies Rule 8's requirement that it not merely allege, but "***show***[] that the pleader is entitled to relief."  *Id.*; Fed. R. Civ. P. 8(a)(2) (emphasis added).

*First,* the district court should identify and eliminate "the allegations in the complaint that are not entitled to the assumption of truth."  *Id.* at 1951.  Conclusory allegations are eliminated at this first step.[6]  *Id.*  Further, allegations—whether conclusory or not—that contradict documents attached to or relied upon in the complaint also must be disregarded.  *See*, *e.g.*, *Brown v. N.Y. City Hous. Auth.*, 2006 U.S. Dist. LEXIS 30193, at *1 (S.D.N.Y. May 17, 2006).

*Second,* the district court should evaluate the remaining, non-conclusory and creditable allegations "to determine if they plausibly suggest an entitlement to relief."  *Iqbal*, 129 S. Ct. at 1951.  This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* at 1949 (citation and internal quotation marks omitted).  Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950.

Beyond the basic requirements of Rule 8 explained in *Twombly* and *Iqbal*, all claims

---

[6]  Importantly, *Iqbal* requires that conclusory allegations be disregarded, no matter how plausible they may be.  "It is the conclusory nature of [such] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."  *Id.* at 1951.

grounded in allegations of fraud must satisfy the heightened pleading requirements of Rule 9(b). In order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks omitted).

Here, plaintiffs' claims fail under both Rule 8's plausibility standard and the heightened particularity requirements of Rule 9(b). This Court should dismiss them for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## A.    Plaintiffs' contract and quasi-contract claims against the Sovereign defendants fail.

Plaintiffs assert two contract claims against the Sovereign defendants: their third cause of action for breach of contract, and their twelfth cause of action for breach of the covenant of good faith and fair dealing. Plaintiffs also assert two quasi-contract claims against the Sovereign defendants: their thirteenth cause of action for unjust enrichment and their fourteenth cause of action for promissory estoppel. The former fail because plaintiffs do not, and cannot, allege that they had any contractual relationship with either of the Sovereign defendants. The latter fail because plaintiffs do allege that they had contracts governing the subject matter of their quasi-contractual claims, and those express contracts preempt any quasi-contract claims.

### 1.    Plaintiffs' contractual claims fail because they had no contract with either of the Sovereign defendants, and plaintiffs do not and cannot allege any factual basis for their alter-ego conclusions.

Obviously, one "cannot be in breach of a contract to which it was not a party." *Village of Webster v. Monroe County Water Auth.*, 703 N.Y.S.2d 648, 650 (2000); *see also Cruickshank & Co. v. Bhicajee*, 765 F.2d 20, 26 (2d Cir. 1985); *Int'l Customs Assocs. v. Ford Motor Co.*, 893 F. Supp. 1251, 1255 (S.D.N.Y. 1995). Likewise, "there can be no covenant of good faith and fair dealing implied where there is no contract." *Lakeville Pace Mech., Inc. v. Elmar Realty Corp.*, 714 N.Y.S.2d 338, 342 (2000). Further, the covenant of good faith and fair dealing arises only in "direct contractual relationships"; it does not extend to "all contracting parties" in a "network of

independent contracts," even where—unlike here—those contracts "'are in fact part of a single unified agreement.'" *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 165 (S.D.N.Y. 1998) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 964, 994-95 (S.D.N.Y. 1995)).

Plaintiffs attempt to mask this fundamental defect in their contract claims against the Sovereign defendants—the absence of any contract to support these claims—by suggesting that they had some unspecified contractual relationship with the Sovereign defendants after all. They also attempt to prop up their contract claims with the unsupported, and false, conclusion that the Sovereign defendants are alter egos of defendant Morabito. Neither contention has any merit.

> **a.    Plaintiffs' own documents and allegations show that defendant Scotti, not Sovereign JF, LLC, sold the Premises and the Lease to plaintiffs.**

Plaintiffs' allegations—and, more importantly, the contractual documents themselves—demonstrate that they had no contract with either of the Sovereign defendants. Specifically, plaintiffs allege that Sovereign JF, LLC sold the Premises to defendant Scotti on or about July 21, 2004. ¶ 61. And indeed, they attach to their complaint the document showing that Sovereign JF, LLC sold the Premises to Scotti. Ex. E. Plaintiffs further allege that Scotti acquired the Lease along with the Premises, which is confirmed by the July 2, 2004 Subordination, Non-Disturbance and Attornment Agreement (Ex. F), and the December 9, 2005 Tenant Estoppel Certificate, which expressly states that Scotti, not Sovereign JF, LLC, was the landlord. Ex. S. In short, both the documents and plaintiffs' allegations make clear they bought the Premises and the Lease from Scotti, not Sovereign JF, LLC. *See* ¶¶ 99, 106; Exs. G, Q, S.

Thus, according to plaintiffs' own documents and admissions, Sovereign JF, LLC did not have any interest in either the Premises or the Lease immediately before plaintiffs bought them, and could not have executed any assignment of the Lease afterwards. The Sovereign defendants do not have, and have never had, any contractual relationship with plaintiffs and therefore cannot be liable for breach of contract or breach of the covenant of good faith and fair dealing. *Village of Webster*, 703 N.Y.S.2d 650; *Piccoli*, 19 F. Supp. 2d at 165.

Given the documentary evidence—which plaintiffs affirmatively submit in support of

their complaint and thus cannot dispute—one must wonder why they have brought contract claims against the Sovereign defendants.  They allege that "[a]t the time of purchase of the Premises by the Plaintiffs, Defendant Sovereign JF, LLC was the lessor and Defendant Eureka Petroleum, Inc. and Defendant Tibarom, Inc. were the tenants." ¶ 107; *see also* ¶ 158.  They also allege  that "[o]n or about December 30, 2005, the interest of Defendant Sovereign JF, LLC in both the Premises and the Lease was transferred to the Plaintiffs and in conjunction with the purchase of the Premises by the Plaintiffs." ¶ 177.  And they allege, on information and belief, that "on a date unknown to the Plaintiffs, and without the written consent of the Plaintiffs, Defendant Sovereign JF, LLC, Defendant Eureka Petroleum, Inc., Defendant Tibarom, Inc., Defendant Samuel E. Pearson, III and Defendant Deborah Pickett, along with non-parties DDS Management, LLC, and Peanut Oil, LLC, executed an Assignment and Assumption of Lease Agreement." ¶ 178.  But these allegations don't make it past either step of the *Iqbal* analysis.  Not only are they entirely conclusory and therefore not entitled to the assumption of truth, they are implausible; they contradict the other, more specific allegations in the complaint and, more importantly, the contracts.  Indeed, because they contradict the contracts, these allegations would not have been sufficient even prior to *Iqbal. See, e.g.*, *Brown*, 2006 WL 1378599, at *1.

   **b.**  **Plaintiffs' conclusory alter-ego allegations are no basis to hold the Sovereign defendants liable for breach of contract (or anything else).**

  Lacking any basis for seeking to hold the Sovereign defendants directly liable for breach of contract or the covenant of good faith and fair dealing, plaintiffs allege that the Sovereign defendants are the alter egos of Paul Morabito.  These allegations also fail at *Iqbal*'s first step; they are conclusory and must be disregarded.  *See Iqbal*, 129 S. Ct. at 1951.

  To make out a claim for alter-ego liability, a plaintiff must allege ***facts*** showing that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 512, 521 (W.D.N.Y. 2007) (Larimer, J.) (quoting *Morris v. N.Y. State Dep't of Taxation*, 82 N.Y.2d 135,

141 (1993)). The plaintiff must establish both elements through factual allegations; conclusions are not enough to avoid dismissal. *Id.* at 521-22 (collecting cases); *see also*, *e.g.*, *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69-70 (2d Cir. 1996) (conclusory alter-ego allegations insufficient, particularly in light of the presumption of corporations' separate identity).

Here, plaintiffs haven't alleged a single fact suggesting, let alone actually showing, that Morabito exercised complete domination over either Sovereign entity and used that domination to commit a fraud. Nor could they—Morabito has never played any ownership or management role whatsoever in either of the Sovereign entities.

Accordingly, the Court should dismiss plaintiffs' claims against the Sovereign defendants for breach of contract and breach of the covenant of good faith and fair dealing (claims 3 and 12) with prejudice. Neither Sovereign defendant ever had any contract with either plaintiff.

> **2.      Plaintiffs' quasi-contractual claims fail because of the admitted existence of contracts—including the Lease that forms the purported basis for eight of plaintiffs' claims—concerning the same subject matter.**

While plaintiffs' contractual claims against the Sovereign defendants fail because there is no contract between plaintiffs and the Sovereign entities, their quasi-contractual claims for promissory estoppel and unjust enrichment fail because there ***are*** express contracts between plaintiffs and other defendants, including the Purchase Agreement and the Lease.

Under New York law, "the existence of an express agreement bars a quasi contract claim concerning the subject matter covered by that express agreement. ***This rule applies even when a plaintiff asserts claims based in quasi contract against a non party to the express agreement***." *Diversified Carting, Inc. v. City of New York*, 2006 U.S. Dist. LEXIS 1701, at *26 (S.D.N.Y. Jan. 20, 2006) (citation omitted and emphasis added). The rule applies to claims for unjust enrichment and promissory estoppel, which are quasi-contractual. *See*, *e.g.*, *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 2009 U.S. Dist. LEXIS 64924, at *25-30 (S.D.N.Y. July 23, 2009) (dismissing claims for unjust enrichment and promissory estoppel); *Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224, 1234 (S.D.N.Y. 1995) (same).

Here, there are at least two express contracts concerning the subject matter of plaintiffs' quasi-contractual claims: their Purchase Agreement for the Premises, and the Lease. Plaintiffs attach both of these to the complaint. Exs. D (Lease) & Q (Purchase Agreement). In particular, plaintiffs cannot deny that the Lease is valid and enforceable, given that it is the purported basis for their first through seventh claims for breach of contract, and their twelfth claim for breach of the covenant of good faith and fair dealing. *See* ¶¶ 157-209, 289-93. Thus, plaintiffs' claims for unjust enrichment and promissory estoppel fail as a matter of law and should be dismissed with prejudice. *See, e.g.*, *Diversified Carting*, 2006 U.S. Dist. LEXIS 1701, at *26; *Law Debenture v. Maverick Tube Corp.*, 2008 U.S. Dist. LEXIS 87438, at *35-37 (S.D.N.Y. March 5, 2007).

**B.      Plaintiffs' tort claims—for negligent misrepresentation, deceptive acts (§ 349), RICO violations, and fraud—also fail.**

**1.      Plaintiffs' claims for fraud, RICO violations, and negligent misrepresentation fail under Rule 9(b).**

All claims premised on an alleged underlying fraud are subject to the heightened pleading requirements of Rule 9(b). *See Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 512, 514 (W.D.N.Y. 2007) (Larimer, J.). "Rule 9(b) does not apply only to claims under RICO and common law fraud, but also to elements of other claims that are premised on fraud," including claims for negligent misrepresentation. *Daly v. Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005).

Rule 9(b) requires plaintiffs to identify what was said, who said it, when, and where, and explain why the alleged statement was fraudulent. *Lerner*, 459 F.3d at 290. Although intent to defraud may be averred generally, that is not a "license to base claims of fraud on speculation and conclusory allegations." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990). To the contrary, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group*, 47 F.3d 47, 52 (2d Cir. 1995); *accord Apace*, 522 F. Supp. 2d at 515. Finally, a plaintiff who sues multiple defendants for fraud must specifically identify ***each defendant's*** fraudulent conduct. "Rule 9(b) is not satisfied where the complaint vaguely

attributes the alleged fraudulent statements to 'defendants.'" *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)

Here, plaintiffs' complaint does not come anywhere near satisfying Rule 9(b). There are absolutely no allegations in the complaint specifically attributing any statement or document— much less a fraudulent statement or document—to either of the Sovereign defendants. *See* Appendix. All the allegations of fraud are generalized allegations about "defendants" generally—precisely what this Court rejected in *Apace* in terms equally applicable here:

> Rather than attribute specific false statements to specific individual defendants, the complaint typically alleges that multiple defendants (whether identified by name or simply as 'these defendants' or some similar collective term), sometimes in concert with unnamed 'others,' made misrepresentations about some general subject matter at 'around' certain periods of time (often narrowed down no further than to a particular month).

> Such sweeping, undifferentiated allegations clearly do not satisfy Rule 9(b).

522 F. Supp. 2d at 517.

Plaintiffs' few allegations addressing the Sovereign defendants are entirely conclusory, and thus don't even satisfy the requirements of Rule 8. *See* Appendix; *Iqbal*, 129 S. Ct. at 1951. Plaintiffs' fraud-based claims necessarily fail under the more rigorous requirements of Rule 9(b).

**2.      All of plaintiffs' tort claims fail under New York's economic loss rule.**

Furthermore, each of plaintiffs' tort claims fails under New York's economic-loss rule and similar doctrines precluding tort recovery for contract damages. First, under New York law, where a plaintiff has a contract with a defendant, and alleges only economic injury, as opposed to personal injury or property damage, he or she is barred from bringing tort claims. *See Hydro Investors, Inc. v. Trafalgar Power Inc.,* 227 F.3d 8, 16 (2d Cir. 2000). "If the damages suffered are of the type remediable in contract, a plaintiff may not recover in tort." *Carmania Corp. v. Hambrecht Terrell Int'l,* 705 F. Supp. 936, 938 (S.D.N.Y. 1989). If a plaintiff cannot (1) "establish that the defendant violated a legal duty separate from its contractual obligations;" *and* (2) "demonstrate that the damages it suffered do not constitute mere 'economic loss,'" it cannot sue for fraud, negligent misrepresentation, or any other tort. *Manhattan Motorcars, Inc. v.*

*Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 n.141 (S.D.N.Y. 2007) (quoting *Robehr Films, Inc. v. American Airlines, Inc.,* 1989 WL 111079, *2 (S.D.N.Y. Sept. 19, 1989)).[7]    Here, plaintiffs allege only monetary injury stemming from a breach of the lease contract; accordingly, the economic-loss rule bars all their tort claims.

Second, New York courts prohibit fraud claims where, as here, the only alleged "fraud" is a promise to perform obligations under the contract.  *See Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 19-20 (2d Cir. 1996).  At bottom, the purported basis of this suit is an allegedly "fraudulent" promise to pay rent under the Lease.   Absent the Tenants' and/or Assignees' alleged failure to perform—for which plaintiffs have sued them in contract— plaintiffs would have suffered no damages at all.   To bring fraud claims simultaneously with their contract claims, plaintiffs must allege a fraudulent statement "collateral or extraneous to" the Purchase Agreement or damages "caused by the misrepresentation and unrecoverable as contract damages."  *McDowell Research Corp. v. Tactical Support Equip., Inc.,* No. 08-CV-6499, 2009 WL 2901594, *5 (W.D.N.Y. Sept. 4, 2009) (Telesca, J.).  They have done neither. They have not alleged any fraudulent statement with particularity, but all the allegedly wrongful conduct relates to the Purchase Agreement.  Nowhere in their complaint do they explain how, and to what extent, their fraud claims seek damages not recoverable in contract.  Accordingly, *Bridgestone/Firestone* and *McDowell* bar their tort claims as well.

### 3.    All of plaintiffs' tort claims fail because plaintiffs do not and cannot allege proximate causation.

Proximate causation is a core requirement for claims sounding in tort, including plaintiffs' common-law claims for negligent misrepresentation[8] and fraud,[9] as well as their

---

[7]  *See also County of Suffolk v. Long Island Lighting Co.,* 728 F.2d 52, 62 (2d Cir. 1984); *Shred-It USA, Inc. v. Mobile Data Shred,* 222 F. Supp. 2d 376, 379 (S.D.N.Y. 2002); *Orlando v. Novurania of Am., Inc.,* 162 F. Supp. 2d 220, 226 & n.2 (S.D.N.Y. 2001).

[8]  *See Revak v. SEC Realty Corp.*, 18 F.3d 81, 90 (2d. Cir. 1994).

[9]  *See Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496 (2d Cir. 1992).

statutory RICO[10] and deceptive acts[11] claims.  All of these claims fail because plaintiffs do not, and cannot, allege proximate causation.

        **a.**      **Plaintiffs expressly disclaimed reliance.**

While plaintiffs attempt to plead proximate causation by claiming that they were induced to purchase the Premises by defendants' alleged misrepresentations, this is also contradicted by the plain language of the Purchase Agreement, under which they expressly ***disclaimed*** reliance on any such statements.[12]  Plaintiffs' disclaimers are fatal to their tort claims.

It is well established under both New York and federal law that plaintiffs' claims should be dismissed where, as here, they have disclaimed reliance on the statements at issue.  *See, e.g.*, *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-21 (1959); *Warner Theatre Assocs. Ltd. v. Metro. Life Ins. Co.*, 149 F.3d 134, 136-37 (2d Cir. 1998) (Winter, J., affirming Sotomayor, J.).[13]

---

[10]  *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992) (proximate causation is required under RICO).

[11]  *See City of New York v. Smokes-Spirits.com*, 12 N.Y.3d 616, 623 (2009) ("[T]his Court has required more than an allegation of 'but for' cause to state a claim for relief under section 349(h)."); *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 129 F. Supp. 2d 578, 597 (W.D.N.Y. 2000) ("[C]laims under New York General Business Law § 349 … require a showing of proximate causation.").

[12]  Reliance *per se* is not an element of plaintiffs' claims under RICO and New York General Business Law section 349.  *See Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131, 2141 (2008); *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000).  But proximate causation is required for both claims, *see id.,* and where, as here, plaintiffs attempt to plead proximate causation by claiming reliance on a false statement, "reliance must still be proven as an element of the claim."  *Biggs v. Eaglewood Mortgage, LLC*, No. PJM 07-2768, 2009 U.S. Dist. LEXIS 62275, at *6 (D. Md. Jan. 5, 2009); *see also McGee v. State Farm Mut. Auto. Ins. Co.*, No. 08-CV-392, 2009 U.S. Dist. LEXIS 60229, at *19-20 n.9 (E.D.N.Y. July 14, 2009); *G&G TIC, LLC v. Alabama Controls, Inc.*, No. 4:07-CV-162, 2008 U.S. Dist. LEXIS 75269, at *13 (M.D. Ga. Sept. 29, 2008); *Dungan v. Acad. at Ivy Ridge*, No. 06-CV-0908, 2008 U.S. Dist. LEXIS 56757, at *11 (N.D.N.Y. July 21, 2008).  Reliance is, of course, an express element of plaintiffs' claims for fraud and negligent misrepresentation.  *See, e.g.*, *Belin v. Weissler*, 1998 U.S. Dist. LEXIS 10492, at *25 (S.D.N.Y. 1998).

[13]  *See also*, *e.g.*, *Harsco Corp. v. Segui*, 91 F.3d 337, 342-47 (2d Cir. 1996); *Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352 (S.D.N.Y. 2002); *Bibeault v. Advanced Health Corp.*, 97 Civ. 6026, 2002 U.S. Dist. LEXIS 225, at *8-20 (S.D.N.Y. Jan. 8, 2002); *Chavin v. McKelvey*, 25 F. Supp. 2d 231, 237 (S.D.N.Y. 1998).

*Danann* is the seminal New York case on disclaimers, and its reasoning has been adopted by the federal courts.  *See*, *e.g.*, *Warner Theatre*, 149 F.3d at 136.  The plaintiff in *Danann*, like plaintiffs here, alleged that it was induced to purchase a lease because of misrepresentations as to the profits to be derived from the investment.  5 N.Y.2d at 319.  But the contract contained a disclaimer stating that the purchaser was relying on its own investigation of the property, and not on any representations of the seller not set forth in the contract, including representations about operation or expenses.  *See id.* at 320.  "Such a specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations."  *Id.* at 320-21.

Here, plaintiffs' disclaimers are even more specific than the disclaimers in *Danann*. Plaintiffs here expressly acknowledged that they were buying the Premises "as is," that they had inspected the Premises and Lease, or would before the closing, that neither the agent nor the seller had made any representation or warranty as to the value of the property, and that they were not relying on any representation by the agent as to, among other things, "the financial condition or business prospects of any tenant, or such tenant's intent to continue or renew its tenancy in the Property."  Ex. Q §§ 7, 12, 24.  Although these disclaimers refer to representations by the seller or the agent, plaintiffs cannot claim that they reasonably relied on alleged representations by the Sovereign defendants, who were not even involved in the transaction, when they expressly disclaimed any reliance on such representations by those who *were* involved in the transaction.

These specific disclaimers—in particular, plaintiffs' disclaimers of any representations about the tenants' intent or ability to pay rent on the Lease—are fatal to each of their tort claims. This Court should dismiss each of them with prejudice.  *See*, *e.g.*, *Danann*, 5 N.Y.2d at 320-21; *Warner Theatre*, 149 F.3d at 136-37.

**b.**     **Any allegation of proximate causation is fatally implausible in light of the recession, which is a far more likely cause of plaintiffs' alleged injuries.**

Even if the disclaimers were not reason enough to defeat any conceivable showing of

proximate causation, the Court still should dismiss their tort claims because plaintiffs' causation allegations are both conclusory and implausible and cannot survive even the initial step of the *Iqbal* analysis. *See Iqbal*, 129 S. Ct. at 1951. Further, even if plaintiffs' causation allegations could be construed as allegations of fact, they would fail at *Iqbal*'s second step, because they don't "plausibly suggest an entitlement to relief," *Iqbal*, 129 S. Ct. at 1951, particularly given that plaintiffs' alleged losses "coincide[d] with a marketwide phenomenon causing comparable losses to other investors." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994); *see also Bastian v. Petren Resources Corp.*, 892 F.2d 680, 684-86 (7th Cir. 1990); *Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.*, No. 07-5423, 2009 U.S. Dist. LEXIS 74382, at *49-51 (E.D. Pa. Aug. 20, 2009); Aff. Exs. 1-9; RJN.

As here, the plaintiff in *First Nationwide* alleged that the defendants intentionally overstated property values by misrepresenting the operating income of the properties and claiming "artificial" transactions. *First Nationwide*, 27 F.3d at 766. The district court initially dismissed the complaint because it failed to allege any facts to indicate the magnitude, and hence the materiality, of the defendants' alleged overstatements of the properties' value. *See id.* at 770. In response, the plaintiffs provided a schedule purporting to set out the approximate amount by which the defendants overstated the property values—which is far more than the plaintiffs here do. *Id.* But the court deemed that effort inadequate because the method the plaintiff used to value the properties at the time of the alleged misrepresentation did not account for the contribution of external market forces to the loss. "Given the complexity of the New York real estate market, and the fact that [plaintiff's] losses came in a the wake of a downturn in the real estate market, [plaintiff] must allege loss causation with sufficient particularity such that we can determine whether the factual basis for its claim, if proven, could support an inference of proximate cause." *Id.* Even accepting the plaintiff's flawed valuation methodology, its "alleged injury was insufficiently close in time to the alleged misrepresentations to warrant the inference of a nexus between the two." *Id.* at 772. The plaintiff alleged that the net operating income for the properties at issue was insufficient to support its loans, but few of the properties went into

default until well after the alleged misrepresentations, defeating the inference of causation. *Id.*

Similarly, the plaintiffs in *Bastian* alleged that the defendants fraudulently induced them to invest in oil and gas limited partnerships. Noting that these investments were made during "a peak year for oil prices and that those prices declined steadily in the succeeding years," Judge Posner found that the complaint did not adequately allege that the purported misstatements were the cause of the plaintiffs' losses. *Bastian*, 892 F.2d at 684. "If the plaintiffs would have lost their shirts in the oil and gas business regardless of the defendants' violations of RICO, they have incurred no loss for which RICO provides a remedy." *Id.* at 686.

In *Luminent,* decided just two months ago, the plaintiffs claimed they were defrauded into purchasing mortgage-backed securities. But the court found that "the one-and-a-half year time period between the alleged misrepresentation and the injury, combined with the market downturn in the mortgage industry that developed in early- to mid-2007, is sufficient to undermine the inference of a nexus between Defendants' misrepresentations and the" plaintiffs' loss. 2009 U.S. Dist. LEXIS 74382, at *49 (footnote omitted). Although "the turmoil in the markets is widely known," the plaintiffs made "no allegations that would allow the Court to apportion any losses between Defendants' misrepresentations and the significant declines in market value for mortgage-backed securities," and thus failed to plead loss causation. *Id.* at *51 (quotation marks omitted).

Here, plaintiffs do not even try to plead facts showing the amounts by which defendants allegedly overstated the values of the properties they bought, or that their alleged losses were caused by defendants and not the economic downturn. This does not meet Rule 8's requirement that they plead facts and not conclusions, much less Rule 9(b)'s mandate that they "explain why the statements were fraudulent." *Lerner*, 459 F.3d at 290; *see also First Nationwide*, 27 F.3d at 770 (pleading materiality requires showing that defendants substantially overstated values).

Moreover, just as in *First Nationwide,* plaintiffs' complaint alleges a "substantial period between the alleged fraud and [plaintiffs' alleged] loss, coupled with the concurrence of that loss with [a] market crash." *First Nationwide*, 27 F.3d at 772; *see also Luminent*, 2009 U.S. Dist.

LEXIS 74382, at *49.  Plaintiffs admit that the Tenants, and then the Assignees, paid the allegedly inflated rents, plus all other property expenses, for almost *two years* before ceasing payment and shutting down their businesses toward the end of 2007, just as the world economy cratered.  *See* ¶¶ 111-14; Aff. Exs. 1-9; RJN.  These admitted facts make it significantly more plausible that any losses plaintiffs suffered were caused by the recession than any unspecified alleged deception by the Sovereign defendants, or some vast RICO conspiracy somehow implicating the Sovereign defendants along with all the others.  *See Iqbal*, 129 S. Ct. at 1951; *First Nationwide*, 27 F.3d at 772; *Bastian*, 892 F.2d at 684-86; *Luminent*, 2009 U.S. Dist. LEXIS 74382, at *49; Aff. Exs. 1-9; RJN.  This Court should dismiss all of plaintiffs' tort claims for failure to establish the essential element of proximate causation.

**4.    Plaintiffs have not stated a RICO claim.**

Given plaintiffs' failure to state any claim whatsoever against the Sovereign defendants, it is unsurprising that they don't come anywhere near satisfying the stringent requirements for pleading a RICO claim, including the Local Rule 5.1(h) requirement of providing a RICO Case Statement setting forth in detail the alleged basis for such a claim.  Plaintiffs' RICO Case Statement simply restates the conclusory allegations of the complaint, providing no additional details or factual contentions that could justify deploying what the First Circuit has called "the litigation equivalent of a thermonuclear device," *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991), against the Sovereign defendants.  Rather, it only confirms that the Court should dismiss plaintiffs' RICO claim.  *See* RCS.

**a.    Plaintiffs have not even purported to allege claims under sections 1962(a) or (b), notwithstanding the contrary assertion in their RICO Case Statement.**

As an initial matter, the Court should dismiss plaintiffs' purported claims under 18 U.S.C. §§ 1962(a) and (b).  Although plaintiffs indicate in their RICO Case Statement that they intend to pursue claims under these subsections of the RICO statute, RCS at 1, their complaint doesn't even purport to state such claims.  Nor could it; the garden-variety fraud (inadequately)

alleged in their complaint is not actionable under sections 1962(a) or (b).

Section 1962(a) is directed at the "use of illegally obtained profits to buy into legitimate businesses," while section 1962(b) addresses claims "that defendants 'muscled in' on a business through loan sharking, bribery, extortion, or fraud."   Hon. Jed S. Rakoff & Howard W. Goldstein, RICO: Civil & Criminal Law & Strategy § 1.06 (2009); *see also* 18 U.S.C. §§ 1962(a) & (b).   Crucially, a plaintiff's alleged injury must be directly caused by the alleged investment or acquisition.   *See Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990) ("[B]ecause the conduct constituting a violation of § 1962(a) is investment of racketeering income, a plaintiff must allege injury from the defendant's investment of the racketeering income to recover under § 1962(a)."); *Mark v. J.I. Racing*, 1997 U.S. Dist. LEXIS 9931, at *7 (E.D.N.Y. July 9, 1997) ("the § 1962(b) allegations similarly fail to state a claim because Mark does not allege an injury caused by the acquisition or control of an enterprise through a pattern of racketeering activity").

Plaintiffs here have alleged nothing of the kind.   Indeed, plaintiffs admit that "[i]t is not known at this time the use or investment of such income," or "the acquisition or maintenance of any interest in or control of the enterprise" to support a claim under sections 1962(a) or (b).   RCS at 26.   Plaintiffs admittedly have not alleged a RICO claim under either subsection, and this Court should dismiss their RICO claim to the extent they purport to do so.   *See id.*

> **b.**      **Neither the complaint nor the RICO Case Statement alleges a pattern of mail or wire fraud to support a claim under section 1962(c).**

Plaintiffs also claim that defendants violated 18 U.S.C. § 1962(c).   In order to state such a claim, plaintiffs must allege (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' business or property.   *See* 18 U.S.C. § 1962(c); *Sedima, S.P.R.L. v. IMREX Co.*, 473 U.S. 479, 496 (1985).   Where, as here, the alleged predicate acts of racketeering activity are mail and/or wire fraud, the details of those acts must be alleged with specificity, and those factual allegations also must give rise to a "strong inference" that the defendants possessed the requisite fraudulent intent.   *Wiener v. Napoli*, 760 F. Supp. 278, 283 (E.D.N.Y. 1991).   Indeed, the concerns behind Rule 9(b)'s requirement of specificity in

claims of fraud "are even more immediate in civil RICO actions, because such suits 'implicate the reputation interests of defendants accused of committing racketeering offenses.'" *Atl. Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505 (S.D.N.Y. 1990) (quoting *Newman v. L.F. Rothschild, Unterberg, Towbin*, 651 F. Supp. 160, 162 (S.D.N.Y. 1986)). And "***if multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them***." *Wiener*, 760 F. Supp. at 284 (emphasis added).

Further, to allege a RICO claim based on mail or wire fraud, plaintiffs must allege a ***pattern*** of such acts with particularity. To constitute a "pattern," there must be at least two acts of racketeering activity within a ten-year period, and plaintiffs must allege "that the racketeering predicates are related, ***and*** that they amount to or pose a threat of continued criminal activity." *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). "Related" conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. "Continuity" refers either to a closed period of repeated conduct, or to past conduct that by its nature threatens future repetition. *Id.* at 241. The pattern element must be alleged with particularity as to each defendant. *See*, *e.g.*, *United States v. Private Sanitation Indus. Ass'n*, 793 F. Supp. 1114, 1140 (S.D.N.Y. 1992) ("In order, then, to verify the adequacy of the forty-four substantive RICO claims of this complaint, it is necessary to inquire into the adequacy of the pleading of the pattern element as to each named defendant.").

As shown above, plaintiffs' complaint does not allege any fraud-based claim, including a RICO claim, with the particularity Rule 9(b) requires. The same is true of plaintiffs' RICO Case Statement, which is just as conclusory as the complaint. None of plaintiffs' allegations even suggest that either of the Sovereign defendants had the requisite fraudulent intent or used the mails or wires to further any allegedly fraudulent scheme. Even as to "defendants" generally, plaintiffs only identify "[i]nnocuous business communications," such as the Letters of Intent and Purchase Agreement between plaintiffs and defendant Scotti, which "are insufficient to lead to a reasonable inference of fraudulent intent." *Wiener*, 760 F. Supp. at 284. Both the complaint and

the RICO Case Statement "(1) fail[] to set forth any specific fraudulent acts, statements or omissions made by the defendants, and (2) fails to describe how the mail matter [that is identified] furthered or executed the defendants' scheme." *Id.* Plaintiffs certainly fail to allege any such facts as to the Sovereign defendants in particular. *See id.*; Appendix; RCS.

Neither have plaintiffs alleged a "pattern" of mail or wire fraud. The only transaction plaintiffs allege with any specificity at all is their purchase of the Premises. As stated above, plaintiffs have not adequately alleged that anything about that transaction was fraudulent. And even if they had, they have not adequately alleged a pattern of related acts that amount to or pose a threat of continued criminal activity. *See H. J.*, 492 U.S. at 239. All plaintiffs allege is that "[i]t is believed from October 2003 to October 2004, the Defendants mailed letters, engaged in communications via email and facsimile and had conversations by telephone and in person, and engaged in wire fraud activities on ten (10) other Jiffy Lube franchises in the State of New York…." RCS at 9. Plaintiffs provide addresses for these alleged Jiffy Lube franchises, but provide no further particulars about the transactions, and certainly not the details required by Rule 9(b) and the RICO case law. *See*, *e.g.*, *Wiener*, 760 F. Supp. at 282-85.

      **c.**     **Plaintiffs have not alleged that each defendant conducted the affairs of the alleged enterprise, as required to state a section 1962(c) claim.**

Moreover, a defendant cannot be liable under section 1962(c) unless it "participated in the ***operation or management*** of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993) (emphasis added). RICO liability is limited to those who "conducted or participated in the conduct of the '***enterprise's*** affairs,' not just their ***own*** affairs." *Id.* at 185 (Court's emphases). Engaging in one's ordinary business—even with purported knowledge of the alleged fraudulent scheme—is no basis for imposing RICO liability. *See id.*; *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 347 (S.D.N.Y. 1999) ("RICO liability may not be imposed on a defendant who merely carries on its own professional activities."); *Indus. Bank v. Baltic Fin. Corp.*, 93 Civ. 9032, 1994 U.S. Dist. LEXIS 8580, 1994 WL 286162, at *3 (S.D.N.Y. July 27, 1994) ("That [defendant] Bank provided banking services—even with knowledge of the fraud—is not enough

22

to state a claim under section 1962(c).").

Here, plaintiffs contend only that the Sovereign defendants did anything other than carry on their own affairs—purchasing, leasing, and selling the Premises in arm's-length transactions that didn't even involve the plaintiffs. Plaintiffs assert that the Sovereign defendants are liable as alter egos of defendant Morabito, but, as discussed already, they allege no factual basis for that conclusion—there is none—which therefore must be disregarded. *See Iqbal*, 129 S. Ct. at 1951.

### d. Plaintiffs admit that their RICO allegations fail the "distinctness" requirement under section 1962(c).

In *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), the Supreme Court held that "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Id.* at 161. This is known as the "distinctness" requirement. *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 438 n.15 (2d Cir. 2008).

Yet, in their RICO Case Statement, plaintiffs admit they cannot meet the "distinctness" requirement, because "the same entity is both the [allegedly] liable 'person' and the 'enterprise' under § 1962(c)." RCS at 26. That admission dooms plaintiffs' claim under section 1962(c).

### e. Plaintiffs have not alleged a RICO conspiracy claim under section 1962(d).

Because, as shown above, plaintiffs fail to state a claim under the other, substantive, RICO sections, they also fail to state a RICO conspiracy claim under section 1962(d). *See, e.g.*, *Allen v. New World Coffee, Inc.*, 2001 U.S. Dist. LEXIS 3269, at *31-32 (S.D.N.Y. March 27, 2001). Plaintiffs' conspiracy claim also fails because their "pleadings fail to provide specific allegations supporting an inference that each defendant knowingly agreed to participate in a conspiracy." *Id.* at *32. Plaintiffs' conspiracy allegations are entirely conclusory, and thus insufficient to state a claim. *See id.*; *Iqbal*, 129 S. Ct. at 1951.

For all the foregoing reasons, the Court should dismiss plaintiffs' RICO claim.

5.    **Plaintiffs' claims for negligent misrepresentation and deceptive practices fail for additional, independent reasons.**

On top of all their other pleading deficiencies, plaintiffs have not alleged and cannot allege a claim for negligent misrepresentation because, "under New York law, a plaintiff may recover for negligent misrepresentation only where the defendant owes her a fiduciary duty." *Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992). Plaintiffs haven't even attempted to allege the ***conclusion*** that the Sovereign defendants owed them any fiduciary duty, much less ***facts*** to support such a conclusion. And the facts that are alleged show that plaintiffs had no relationship of any kind with the Sovereign defendants, much less a fiduciary relationship. For that reason, in addition to all the others set forth above, their negligent misrepresentation claim against the Sovereign defendants should be dismissed with prejudice. *See id.*

Plaintiffs' claim under New York General Business Law section 349 also fails for additional and independent reasons, as demonstrated at length in the brief filed by REIBC, which we incorporate here by reference. In particular, section 349 "is intended to protect consumers, that is, those who purchase goods and services for personal, family or household use." *Sheth v. New York Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (2000). "Indeed, courts generally find that a plaintiff states a claim under § 349 only when they allege a harm to public health or safety." *Clover Pool Supply Co. v. Cent. NY News, Inc.*, 2006 U.S. Dist. LEXIS 83987, at *11 (W.D.N.Y. November 17, 2006) (quotation marks omitted). Plaintiffs here have alleged no such thing.[14]

IV.    **CONCLUSION**

For the foregoing reasons, plaintiffs' complaint against the Sovereign defendants should be dismissed in its entirety, with prejudice.

Dated: October 30, 2009

---

[14] Finally, plaintiffs' fifteenth "cause of action" for "tolling" should be dismissed because it is a preemptive response to defendants' statute-of-limitations defense, not a free-standing claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

**NIXON PEABODY LLP**

By: /s/     Carolyn G. Nussbaum

    Carolyn G. Nussbaum
    1100 Clinton Square
    Rochester, New York 14604-1792
    (585) 263-1000
    cnussbaum@nixonpeabody.com
    *Attorneys for Defendants Sovereign JF, LLC and*
    *Sovereign JF, SPE Manager, Inc.*

**KEKER & VAN NEST LLP**

    Daniel Purcell
    Dan Jackson
    710 Sansome Street
    San Francisco, California  94111
    (415) 391-5400
    dpurcell@kvn.com
    djackson@kvn.com

12764846

25

## APPENDIX

For the Court's convenience, defendants Sovereign JF, LLC and Sovereign JF, SPE Manager, Inc. have compiled below plaintiffs' allegations that specifically reference one or both of the Sovereign defendants from (a) plaintiffs' complaint and (b) plaintiffs' RICO Case Management Statement (Docket Entry No. 8).

**A.    Paragraphs from plaintiffs' complaint with allegations mentioning one or both of the Sovereign defendants:**

11.    Upon information and belief, Defendant Sovereign JF, LLC is a foreign limited liability company doing business in the State of New York with a principal place of business located at 777 California Avenue, Palo Alto, California 94304.

12.    Upon information and belief, Defendant Sovereign JF, SPE Manager, Inc. is a foreign limited liability company doing business in the State of New York with a principal place of business located at 777 California Avenue, Palo Alto, California 94304.

59.    Upon information and belief, on or about April 29, 2004, a Bargain and Sale Deed was filed with the County Clerk's Office of Monroe County which transferred ownership of the Premises from Defendant Rochester Lube, LLC as agent for Defendant Tibarom, Inc. to Defendant Sovereign JF, LLC for a purchase price of $1,180,620.00.

60.    Upon information and belief, on or about April 29, 2004, a Memorandum of Lease was filed with the County Clerk's Office of Monroe County which identified the Lessor of the Premises as Defendant Sovereign JF, LLC and the Lessees of the Premises as Defendant Eureka Petroleum, Inc. and Defendant Tibarom, Inc.

61.    Upon information and belief, on or about July 21, 2004, a Limited Warranty Deed was filed with the County Clerk's Office of Monroe County which transferred ownership of the Premises from Defendant Sovereign JF, LLC to Defendant Daniel J. Scotti, Jr. for a purchase price of $1,324,529.00.

107.    At the time of purchase of the Premises by the Plaintiffs, Defendant Sovereign JF, LLC was the lessor and Defendant Eureka Petroleum, Inc. and Defendant Tibarom, Inc. were

the tenants.

138. Upon information and belief, Defendant Paul Morabito is or at one time was an officer of Defendant Soverign JF, LLC.

139. Upon information and belief, Defendant Paul Morabito is or at one time was an officer of Defendant Sovereign JF, SPE Manager, Inc.

144. Upon information and belief, Defendant Sovereign JF, SPE Manager, Inc. is the managing member and alter ego of Defendant Sovereign JF, LLC.

145. Upon information and belief, Defendant Sovereign JF, LLC is an alter-ego of Defendant Paul Morabito.

146. Upon information and belief, Defendant Sovereign JF, SPE Manager, Inc. is an alter-ego of Defendant Paul Morabito.

150. Defendant Paul Morabito controlled Defendant Sovereign JF, LLC, Defendant Sovereign JF, SPE Manager, Inc., Defendant Eureka Petroleum, Inc., Defendant Tibarom, Inc., and Defendant Rochester Lube, Inc. and directed the business and financial activities of these Defendants, used assets of these Defendants for personal uses, and caused assets of these Defendants to be transferred to him and other corporations without adequate consideration and as a mere shell game and to further the scheme and conspiracy which damaged the Plaintiffs.

158. Defendant Eureka Petroleum, Inc. and Defendant Tibarom, Inc. were the tenants of Defendant Sovereign JF, LLC at the Premises and pursuant to the Lease at the time the Plaintiffs purchased the Premises on or about December 30, 2005.

176. Defendant Sovereign JF, SPE Manager, Inc. is the managing member and alter ego of Defendant Sovereign JF, LLC.

177. On or about December 30, 2005, the interest of Defendant Sovereign JF, LLC in both the Premises and the Lease was transferred to the Plaintiffs and in conjunction with the purchase of the Premises by the Plaintiffs.

178. Upon information and belief, and on a date unknown to the Plaintiffs, and without the

written consent of the Plaintiffs, Defendant Sovereign JF, LLC, Defendant Eureka Petroleum, Inc., Defendant Tibarom, Inc., Defendant Samuel E. Pearson, III and Defendant Deborah Pickett, along with non-parties DDS Management, LLC, and Peanut Oil, LLC, executed an Assignment and Assumption of Lease Agreement.

**B.    Allegations mentioning the Sovereign defendants from plaintiffs' RICO Case Statement:**

The Defendants are as follows: Daniel J. Scotti, Jr.; Marcus & Millichap Real Estate Investment Brokerage Company; Glen Kunofsky; Andrew R. Dorf; Scott Dragos; Chris Zorbas; PGP Valuation, Inc.; Bruce D. Coleman; Sovereign JF, LLC; Sovereign JF, SPE Manager, Inc.; Eureka Petroleum, Inc.; Tibarom, Inc.; Rochester Lube, LLC; Samuel E. Pearson, III; Deborah Pickett; and Paul Morabito.  RICO Case Statement at 2.

The Defendants Paul Morabito, Samuel E. Pearson, III and Deborah Pickett used Sovereign JF, LLC, Sovereign JF, SPE Manager, Inc., Eureka Petroleum, Inc., Tibarom, Inc. and Rochester Lube, LLC as dummy or shell corporations to hide the scheme.  *Id.*

The Defendants Bruce D. Coleman, Rochester Lube, LLC, Tibarom, Inc., Sovereign JF, LLC and Daniel J. Scotti artificially inflated the value of the Premises as the Premises was sold between them. It was not disclose to the Plaintiffs that the fair market value of the Premises had been artificially inflated.  *Id.*

It is believed that Defendant Paul Morabito is or at one time was an officer of Defendant Sovereign JF, LLC, is or at one time was an officer of Defendant Sovereign JF, SPE Manager, Inc., is the Chief Executive Officer of Defendant Eureka Petroleum, Inc., is the President and Secretary of Defendant Tibarom, Inc., and is or at one time was an officer of Defendant Rochester Lube, LLC; that Defendant Paul Morabito is a co-conspirator in connection with the Defendants' scheme and controlled the sham tenants in the Premises; that Defendant Sovereign JF, SPE Manager, Inc. is the managing member and

alter ego of Defendant Sovereign JF, LLC; that Defendant Sovereign JF, LLC, Defendant Sovereign JF, SPE Manager, Inc., Defendant Eureka Petroleum, Inc., Defendant Tibarom, Inc., and Defendant Rochester Lube, Inc. are the alter-egos of Defendant Paul Morabito; and that Defendant Paul Morabito controlled Defendant Sovereign JF, LLC, Defendant Sovereign JF, SPE Manager, Inc., Defendant Eureka Petroleum, Inc., Defendant Tibarom, Inc., and Defendant Rochester Lube, Inc. and directed the business and financial activities of these Defendants, used assets of these Defendants for personal uses, and caused assets of these Defendants to be transferred to him and other corporations without adequate consideration and as a mere shell game and to further the scheme and conspiracy which damaged the Plaintiffs. *Id.* at 7.

In addition, the Plaintiffs sustained damages for breach of contract by Defendants Sovereign JF, LLC, Sovereign JF, SPE Manager, Inc., Eureka Petroleum, Inc., Tibarom, Inc., Samuel E. Pearson, III and Deborah Pickett for future rents due in an amount believed to exceed the sum of Three Million Five Hundred Thousand Dollars and Zero Cents ($3,500,000.00). *Id.* at 8.

The Defendants Paul Morabito, Samuel E. Pearson, III and Deborah Pickett used Sovereign JF, LLC, Sovereign JF, SPE Manager, Inc., Eureka Petroleum, Inc., Tibarom, Inc. and Rochester Lube, LLC as dummy or shell corporations to hide the scheme. *Id.* at 11.

The Defendants Bruce D. Coleman, Rochester Lube, LLC, Tibarom, Inc., Sovereign JF, LLC and Daniel J. Scotti artificially inflated the value of the Premises as the Premises was sold between them. It was not disclose to the Plaintiffs that the fair market value of the Premises had been artificially inflated. *Id.*

It is believed that Defendant Paul Morabito is or at one time was an agent of and an officer of Defendant Sovereign JF, LLC, is or at one time was an agent of and an officer

of Defendant Sovereign JF, SPE Manager, Inc., is an agent of and the Chief Executive Officer of Defendant Eureka Petroleum, Inc., an agent of and is the President and Secretary of Defendant Tibarom, Inc., and is or at one time was an agent of and an officer of Defendant Rochester Lube, LLC. *Id.* at 14.

On or about December 30, 2005, and in conjunction with the purchase of the Premises, the Plaintiffs became Landlord under the Lease with twenty three years eleven months remaining under the Lease. At the time of purchase of the Premises by the Plaintiffs, Defendant Sovereign JF, LLC was the lessor and Defendant Eureka Petroleum, Inc. and Defendant Tibarom, Inc. were the tenants. *Id.* at 19-20.

From on or about April 29, 2004 to on or about January 13, 2006, and pertaining to the history of the transfers of the Premises between the Defendants before the Premises was transferred to the Plaintiffs, it is believed that the Defendants engaged in wire fraud activities as the Premises passed from one party to another for the amounts of consideration as set out in the deeds on file with the County Clerk's Office of Monroe County. Specifically it is believed that the wire fraud activities would have taken place at or around the time of the land transfers including: . . . on or about April 29, 2004, when a Bargain and Sale Deed was filed with the County Clerk's Office of Monroe County which transferred ownership of the Premises from Defendant Rochester Lube, LLC as agent for Defendant Tibarom, Inc. to Defendant Sovereign JF, LLC for a purchase price of $1,180,620.00; on or about April 29, 2004, when a Memorandum of Lease was filed with the County Clerk's Office of Monroe County which identified the Lessor of the Premises as Defendant Sovereign JF, LLC and the Lessees of the Premises as Defendant Eureka Petroleum, Inc. and Defendant Tibarom, Inc.; on or about July 21, 2004, when a Limited Warranty Deed was filed with the County Clerk's Office of Monroe County which transferred ownership of the Premises from Defendant Sovereign JF, LLC to Defendant Daniel J. Scotti, Jr. for a purchase price of $1,324,529.00. . . . *Id.* at 20-21.

State the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise; **RESPONSE**: Defendants Daniel J. Scotti, Jr.; Marcus & Millichap Real Estate Investment Brokerage Company; Glen Kunofsky; Andrew R. Dorf; Scott Dragos; Chris Zorbas; PGP Valuation, Inc.; Bruce D. Coleman; Sovereign JF, LLC; Sovereign JF, SPE Manager, Inc.; Eureka Petroleum, Inc.; Tibarom, Inc.; Rochester Lube, LLC; Samuel E. Pearson, III; Deborah Pickett; and Paul Morabito. *Id.* at 22-23.

It is believed that Defendant Paul Morabito is or at one time was an agent of and an officer of Defendant Sovereign JF, LLC, is or at one time was an agent of and an officer of Defendant Sovereign JF, SPE Manager, Inc., is an agent of and the Chief Executive Officer of Defendant Eureka Petroleum, Inc., an agent of and is the President and Secretary of Defendant Tibarom, Inc., and is or at one time was an agent of and an officer of Defendant Rochester Lube, LLC. *Id.* at 23-24.

[Pendent state claims include] Breach of contract due to the purported Assignment against Defendants Sovereign JF, LLC, Sovereign JF, SPE Manager, Inc., Eureka Petroleum, Inc. and Tibarom, Inc. in an amount believed to exceed the sum of Three Million Five Hundred Thousand Dollars and Zero Cents ($3,500,000.00). *Id.* at 28.