UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROSEMARIE OZBAKIR, et al.,

                              Plaintiffs,

                                                                       DECISION AND ORDER

                                                                        09-CV-6460L

                    v.

DANIEL J. SCOTTI, JR.,
et al.,

                              Defendants.
_____

       This action was commenced in New York Supreme Court, Monroe County, by plaintiffs Rosemarie Ozbakir and Ali Demir, against sixteen defendants, alleging various claims arising out of the sale of certain commercial real property ("premises" or "property") in East Rochester, New York. The action was removed to this Court by one of the defendants, Sovereign JF, SPE Manager, Inc., on the basis of federal question jurisdiction under 28 U.S.C. § 1331, because plaintiffs had asserted a claim under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. The RICO claims, and the other state law claims, were generally based on plaintiffs' allegations that defendants engaged in a scheme to defraud plaintiffs in connection with the sale of the property to them.

       On February 10, 2011, the Court issued a Decision and Order, familiarity with which is assumed, granting motions to dismiss by the defendants, and granting plaintiffs leave to file an amended complaint within thirty days. 764 F.Supp.2d 556. On March 9, 2011, however, plaintiffs' counsel informed the Court by letter that plaintiffs had elected not to file an amended complaint. Dkt. #130. The Court therefore entered judgment in favor of defendants, and closed the case. Dkt. #131.

Six of the defendants–Marcus & Millichap Real Estate Investment Brokerage Company ("M&M"), Daniel J. Scotti, Jr., Glen Kunofsky, Andrew R. Dorf, Scott Dragos, and Chris Zorbas ("moving defendants")–now move for an order awarding them attorney's fees, based on a fee-shifting provision in the purchase agreement for the property ("Purchase Agreement"). That agreement provided, in part, that

> [i]n any litigation, arbitration or other legal proceeding which may arise between any of the parties hereto, including Agent, the prevailing party shall be entitled to recover its costs, including costs of arbitration, and reasonable attorney's fees in addition to any other relief to which such party may be entitled.

Complaint ¶ 99 and Ex. Q ¶ 27.

While that provision might seem obviously to provide for an award of attorney's fees in this case, plaintiffs contend that things are not quite so simple. First, plaintiffs contend that the fee-shifting provision in the Purchase Agreement should not be read to provide for fees in a suit like this one, asserting claims for RICO violations, negligent misrepresentation, fraud, unjust enrichment, and other torts; rather, according to plaintiffs, the provision should be interpreted as limiting the availability of fees to actions based upon an alleged breach of the Purchase Agreement itself.[1]

Plaintiffs argue that at the very least, the Court cannot find an "unmistakably clear" intention on the part of the parties that fees should be awarded in this action, and that therefore defendants' motion should be denied. *See Hooper Assoc. v. AGS Computers*, 74 N.Y.2d 487, 492 (1989) ("Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise"); *accord*

---

[1] Although the complaint did assert some claims for breach of contract against certain other defendants (who have never appeared in this action), those claims were based on a lease between plaintiffs and those defendants. Plaintiffs did not assert breach of contract claims against the moving defendants, nor did they assert any claims for breach of the Purchase Agreement.

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) (citing *Hooper*).

Second, plaintiffs argue that even if the Court were to give effect to the fee-shifting provision, the Court should find that only defendant Scotti is entitled to its benefits. Plaintiffs note that the only parties to the Purchase Agreement were themselves and defendant Scotti; none of the other defendants are signatories to the agreement.

Finally, plaintiffs assert that fees should not be awarded here because in general, different standards apply to cases involving prevailing defendants than to those involving prevailing plaintiffs. Plaintiffs maintain that attorney's fees should generally not be awarded against losing plaintiffs unless the plaintiffs' claims were frivolous or groundless, or the plaintiffs continued to litigate their claims after it became clear that their claims were meritless.

**DISCUSSION**

**I. Defendants' Entitlement to Fees**

As explained by the Court of Appeals for the Second Circuit, in an action arising under state law, a federal court applies the law of the relevant state in determining whether to award attorney's fees. *Mid-Hudson*, 418 F.3d at 177. In the case at bar, jurisdiction was premised on the existence of a federal question, due to plaintiffs' assertion of a RICO claim, but plaintiffs' other claims were brought under New York law, and the Purchase Agreement was expressly governed by New York law. *See* Purchase Agreement ¶ 33.

In my prior decision, I found it unnecessary to address defendants' arguments concerning the merits of plaintiff's claims under state law. The Court stated that although defendants' various arguments as to why those claims should be dismissed "appear[ed] to have some merit, ... [a]ll the state law claims ultimately suffer[ed] from the same basic defect as the RICO claims, which [wa]s that the underlying factual allegations [we]re insufficient under federal pleading standards,"

specifically Rule 9(b). 764 F.Supp.2d at 575. Having dismissed plaintiffs' RICO claims without prejudice, the Court stated that "[p]laintiffs' claims under state law are therefore dismissed as well, again without prejudice to plaintiffs' filing of an amended complaint setting forth those claims in a manner that complies with the pleading requirements of the Federal Rules of Civil Procedure." *Id.* at 575-76. As stated, plaintiffs declined to do so.

As a threshold question, then, the Court must determine whether state or federal law controls the issue of defendants' entitlement to attorney's fees. The Second Circuit has stated that in a diversity action, "[s]tate law creates the substantive right to attorney's fees." *Mid-Hudson*, 418 F.3d at 177. While jurisdiction in this action was premised on the existence of a federal question rather than diversity of citizenship, *see* Notice of Removal (Dkt. #1) ¶ 1, the same principle applies. *See Equals Int'l., Ltd. v. Scenic Airlines*, 35 Fed.Appx. 532, 534 (9th Cir. 2002) (stating that "[f]ederal courts are required to apply state law in diversity actions with regard to the allowance or disallowance of attorney fees," and that "[a]lthough Equals originally brought this case as a federal question copyright case, not as a diversity action, the same *Erie* doctrine principles apply"). In addition, "[a]lthough the RICO statute only permits prevailing plaintiffs to recover attorney's fees, prevailing defendants may also recover attorney's fees when specified in an agreement of the parties." *Bonner v. Redwood Mortgage Corp.*, No. C 10-00479, 2010 WL 2528962, at *4 (N.D.Cal. June 18, 2010) (holding that since attorney's fee provisions of parties' contract were broad enough to cover actions under RICO, defendants, as prevailing parties, were entitled to attorney's fees on plaintiffs' civil RICO claim).

"[I]t is well settled in New York law that, '[i]nasmuch as a promise by one party to a contract to indemnify the other for [attorney's] fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own [attorney's] fees, the court should not infer a party's intention to waive the benefit of the [American Rule] unless the intention to do so is unmistakably clear from the language of the promise.'" *U.S. Fidelity and Guar. Co. v. Braspetro Oil Services Co.*, 369 F.3d 34, 75 (2d Cir. 2004) (quoting *Hooper*, 74 N.Y.2d at 492). *See also*

*NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear"); *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003) ("while parties may agree that attorneys' fees should be included as another form of damages, such contracts must be strictly construed to avoid inferring duties that the parties did not intend to create").

While fee-shifting agreements should not be lightly inferred, then, they will be enforced, as long as it was clearly the parties' intent to provide for fee awards under particular circumstances. Indeed, the Second Circuit has stated that "where a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception." *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993). *See*, *e.g.*, *Mid-Hudson*, 418 F.3d at 179 (affirming district court's decision to award fees pursuant to parties' contract); *Diamond D Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 18 (2d Cir. 1992) (same).

In my view, the fee-shifting provision here plainly encompasses plaintiffs' claims in this case. Plaintiffs' assertion that the fee provision only applies to claims for breach of the Purchase Agreement lacks any support in the record. On its face, the provision is in no way limited to breach of contract claims; in fact, it is difficult to imagine how could have been any more broadly worded, inasmuch as it applies to "any litigation, arbitration or other legal proceeding which may arise between any of the parties hereto ... ."[2] Clearly that language cannot reasonably be interpreted as limited to purely contractual claims. Had such been the parties' intent, it would have been a simple matter to include language to that effect in the agreement. They did not do so, and this provision must therefore be read as covering all claims arising out of the Purchase Agreement, regardless of

---

[2]Read literally, in fact, this provision does not even seem to be limited to litigation related to the Purchase Agreement; by its terms, it covers *any* litigation between *any* of the parties to the agreement, without exception as to the subject matter of the litigation. While I express no opinion on whether such a clause would be enforceable as to litigation wholly unrelated to the Purchase Agreement, I see no bar to its application here, since the claims at issue in this case do relate to the Purchase Agreement.

whether the claims sound in contract or tort. *See Diamond D*, 979 F.2d at 18-19 (provision in franchise agreement providing for award of attorney's fees expended "to enforce any obligation" under the contract permitted award for fees incurred defending against counterclaims for fraudulent inducement and misrepresentation, since counterclaims, if successful, would have vitiated the contract); *cf. Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc.*, No. 11 Civ. 1456, 2011 WL 6935295, at *4 (S.D.N.Y. Dec. 29, 2011) (plain language of attorney's fee provision indicated that plaintiff was only entitled to fees relating to litigation to enforce the contract, since provision specifically provided that plaintiff could only recover fees and other litigation expenses if plaintiff prevailed "in any action ... to secure or protect [plaintiff's] rights under this Agreement ...").

Plaintiffs' RICO claim, like their other claims against the moving defendants, certainly related to the Purchase Agreement. The gist of those claims was that defendants misrepresented certain facts concerning the property that was the subject of the Purchase Agreement, and that they deliberately inflated the value of the property, to induce plaintiffs to enter into the agreement. There is simply no way to separate those claims from the agreement itself, and I therefore conclude as a matter of law that these claims relate to, and arise out of the Purchase Agreement, and that they are within the parties' intended scope of the fee-shifting provision. *See Azar v. National City Bank*, 382 Fed.Appx. 880, 887 (11th Cir. 2010) (fact that plaintiff had asserted a tort claim of fraudulent inducement did not preclude application of contractual provisions for attorney's fees, since plaintiff alleged that defendant's fraudulent misrepresentations induced the contracts or loans at issue) (applying Florida law). *See also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 855-56 (2d Cir. 1987) (agreeing with district court that arbitration clause covering "[a]ny controversy arising out of or relating to this contract" was "sufficiently broad to require arbitration of Genesco's fraudulent inducement claim," as well as its claims for unfair competition and other torts) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967)).

Plaintiffs also note that only one of the moving defendants, Daniel Scotti, was a signatory to the Purchase Agreement. *See* Dkt. #1-3 at 145, 154. The attorney's fee provision, however, provided for a fee award in favor of the prevailing party "[i]n any litigation ... between any of the parties hereto, *including Agent* ... ." *Id.* ¶ 27. The agreement further provides that M&M "represents the Seller [*i.e.*, Scotti] as the Seller's agent." *Id.* ¶ 21. Plaintiffs agree that M&M is the "Agent" referred to in the agreement. *See* Plaintiffs' Mem. of Law (Dkt. #139) at 3. The clear import of that language is that M&M is entitled to fees if it prevails in any litigation between M&M, the plaintiffs, and Scotti, relating to the Purchase Agreement.[3]

That provision reasonably must be interpreted as extending to the other individual defendants as well, all of whom were employees of M&M. Though it may have an independent legal existence, a company such as M&M can only act through its employees, and it would make little sense to read this fee-shifting provision as applying to M&M as an entity but not to its individual employees. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 165 (2001) (recognizing that "a corporation acts through its employees"); *Motorola, Inc. v. Lemko Corp.*, 609 F.Supp.2d 760, 770 (N.D.Ill. 2009) ("A company, by nature, acts through its officers and employees"). There appears to be no dispute here that these individual defendants were at all times acting within the scope of their employment as agents of M&M, and therefore M&M's rights under the fee-shifting provision should extend to them as well.[4]

---

[3]Apparently, M&M represented both plaintiffs and Scotti at different times and in connection with different transactions. In December 2004, plaintiffs and M&M entered into a representation agreement, *see* Dkt. #1-3 at 102, in which M&M agreed to act as plaintiffs' agent in connection with the sale of certain real property that plaintiffs owned in California. That sale was intended to form part of an exchange for the East Rochester property, pursuant to section 1031 of the Internal Revenue Code. *See Ozbakir*, 764 F.Supp.2d at 561 (describing agency agreement and property sale). The November 2005 Purchase Agreement between plaintiffs and Scotti, however, states that with respect to that transaction, M&M was acting as Scotti's agent, not plaintiffs', although M&M did owe certain duties to plaintiffs. *See* Dkt. #1-3 ¶ 21.

[4]I also note that in their complaint, plaintiffs sought attorney's fees from all the defendants. *See* Dkt. #1-3 ¶ 243, and at 48 ¶ 17. They did not limit their request to Scotti, the other signatory to the Purchase Agreement, or to any other particular defendants. While I am not
(continued...)

At the Court's direction, following oral argument the parties submitted additional briefs concerning the holding of the Court of Appeals for the Eleventh Circuit in *Warfield v. Stewart*, 434 Fed.Appx. 777 (11th Cir. 2011). In *Warfield*, the plaintiff purchasers of real property sued their realtors, alleging various tort and contract claims based on the defendants' alleged failure to disclose certain material facts concerning the property. After a jury returned a verdict for the defendants, the district court awarded attorney's fees in favor of the defendants, based on a fee-shifting provision in the sales contract for the property.

On appeal, the Eleventh Circuit reversed, holding that the plaintiffs' claims against the realtors did not arise out of the sales contract–which contained a fee-shifting provision–but from the brokerage agreement between the plaintiffs and the realtors, which contained no such provision. Similarly, the court observed that "the Realtors' duty to disclose material facts relating to the property arose from their contractual relationship with the Warfields under the *brokerage agreement*, not the Sales Contract." *Id.* at 785.

In contrast to the instant case, however, the realtors in *Warfield* "had no duties under the Sales Contract, nor any rights." *Id.* In the case at bar, the Purchase Agreement expressly provided that M&M did have certain "affirmative legal obligations" to plaintiffs, including a duty to exercise "reasonable skill and care in the performance of its duties," a "duty of honest and fair dealing and good faith," and a duty to disclose known material facts concerning the property. Dkt. #1-3 ¶ 21. M&M may not have been a signatory to that agreement, but both the plaintiffs and defendants agreed in that contract about M&M's role with respect to the purchase and sale of the subject property, and as to the scope of M&M's duties to plaintiffs. The parties to this lawsuit, then, memorialized in the Purchase Agreement their understanding that M&M did have certain specified duties in connection

---

⁴(...continued)
persuaded by defendants' argument that plaintiffs are thereby estopped from asserting that the fee-shifting provision does not apply to the individual defendants, *see New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (setting forth factors that courts should consider in deciding whether judicial estoppel applies), plaintiffs' present assertion to that effect rings somewhat hollow in light of that prior request.

with the sale, and they agreed in that same contract that M&M would be entitled to recover attorney's fees if it prevailed in any litigation with the other parties. Thus, M&M's duties to plaintiffs–unlike the realtors' duties in *Warfield*–arose under the Purchase Agreement, which not only imposes those duties on M&M, but also confers upon M&M a right to recover attorney's fees.

Plaintiffs' argument that fees should be denied because different standards apply to cases involving prevailing defendants, as opposed to prevailing plaintiffs, merits little comment. That principle applies in certain types of actions, such as civil rights suits, and is based on the judicial policy of encouraging meritorious civil rights suits. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 523 (1994) (citing *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968)). Such policy considerations are absent in purely commercial litigation, especially where the parties' contract draws no distinctions between prevailing plaintiffs and defendants. *See Fogerty*, 510 U.S. at 534 (holding that "[p]revailing plaintiffs and prevailing defendants are to be treated alike" under the fee-shifting provision of the Copyright Act).

## II. Amounts of Defendants' Fee Awards

### A. General Principles

Plaintiffs contend that even if the Court does find that an award of fees is warranted, the amounts sought by defendants M&M and Kunofsky are excessive and should be reduced.

Defendants' attorney's fee requests comprise three separate motions. Defendants M&M, Dorf, Zorbas, and Dragos ("M&M defendants") seek fees totaling $213,473.85 (Dkt. #153), defendant Scotti seeks $20,412.50 in attorney's fees and $838.45 in costs (Dkt. #152), and defendant Kunofsky seeks fees totaling $39,639.61 (Dkt. #154, #158).

Plaintiffs assert that the M&M defendants' request is excessive, largely because it represents duplicative work by two law firms. The M&M defendants retained two firms in this matter: Leclair Korona Giordano Cole LLP ("LKGC"), a Rochester, New York firm; and Scheper Kim & Harris, LLP ("SKH"), a Los Angeles, California firm. The M&M defendants' fee request represents

$188,127.43 attributable to work performed by SKH and $25,346.42 for LKGC. Plaintiffs contend that these firms' time records show that they performed unnecessary, overlapping work, and that their requested hourly rates are unreasonably high as well.

Plaintiffs further assert that the amount sought by Kunofsky's attorneys, Kobre & Kim is excessive, both because the requested hourly rates are unreasonable and because Kobre & Kim seeks fees for noncompensable items. Dkt. #55 ¶¶ 18-21. Plaintiffs do not appear to challenge the hours or hourly rates submitted by counsel for defendant Scotti; as stated, their challenge to Scotti's request is based upon plaintiffs' assertion that none of the defendanrs are entitled to any fee award at all, a contention that I have rejected.

With respect to the amount of the fee awards, "[a] district court's award of attorneys' fees pursuant to a contractual fee-shifting provision must be reasonably related to the fee arrangement that the prevailing party would have made with counsel absent a fee-shifting agreement. A party is not entitled to reimbursement for fees that it would not have agreed to pay if it there had been no contractual provision for reimbursement." *In Time Products, Ltd. v. Toy Biz, Inc.*, 38 F.3d 660, 667-68 (2d Cir. 1994) (citations omitted). "When determining a fee award based upon a contractual attorneys' fees agreement between the parties, ... courts have 'broad discretion' and need not follow a specific formula. As such, the Court need not pore over every hour and minute billed but only make adjustments for any unnecessary, unreasonable, or excessive fees." *Clarendon Nat. Ins. Co. v. Advance Underwriting Managers Agency, Inc.*, No. 06 Civ. 15361, 2011 WL 6153691, at *2 (S.D.N.Y. Dec. 8, 2011) (quoting *U.S. Fidelity & Guaranty Co. v. Baspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004)).

In exercising that discretion, however, courts generally will "order the losing party to pay the amount actually incurred, so long as those amounts are reasonable." *Carco Group, Inc. v. Maconachy*, No. CV 05–6038, 2011 WL 6012426, at *2 (E.D.N.Y. Dec. 1, 2011) (quoting *Chinatrust Bank (U.S.A.) v. Pinter*, No. 04-CV-5331, 2008 WL 2987152, at *2 (E.D.N.Y. July 31, 2008)). "Courts in this Circuit employ a 'presumptively reasonable fee' standard to determine the

amount to award as attorneys' fees, which 'boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.'" *Carco Group*, 2011 WL 6012426, at *2 (quoting *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)).

While a number of factors may come into play in determining what fee is reasonable, "[a]n appropriate award of attorneys' fees is not a science, of course, and is not susceptible to exacting precision." *Concrete Flotation Sys., Inc. v. Tadco Const. Corp*, No. 07-CV-319, 2010 WL 2539771, at *8 (E.D.N.Y. Mar. 15, 2010). "Judges should use their experience with the case, as well their experience with the practice of law, to assess the reasonableness of the hours spent and rates charged in a given case." *Fox Indus., Inc. v. Gurovich*, No. CV 03-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (internal quotation marks and citation omitted).

**B. Application to this Case**

**1. M&M Defendants**

Applying these standards here, I conclude that the fees sought by the M&M defendants are unreasonably high and must be significantly reduced. The requested fee award here represents an award for 491.4 hours billed by SKH, and 102 hours billed by LKGC; in other words, nearly 600 attorney hours. That is the equivalent of one attorney working 40-hour weeks exclusively on this one case for 15 weeks.

Defendants seek to justify those fees by arguing that plaintiffs' claims were factually and legally complex, and that removal of this case from state court "was complicated by the initial reluctance of certain defendants [to seek removal] and the defunct status of others." Def. Mem. of Law (Dkt. #153) at 6. They also contend that the different defenses available to the various M&M defendants warranted two separate motions to dismiss (Dkt. #16 and #49), and that counsel had to perform additional work to seek attorney's fees. *Id.*

Based on my familiarity with this litigation, I find that the circumstances of this case did not warrant the number of hours claimed here. First, although the complaint was lengthy, its allegations were not as complex as the M&M defendants allege. In fact, in my decision granting the motions to dismiss, I noted that the complaint alleged its fraud claims "in broad, nonspecific terms ... ." 764 F.Supp.2d at 565. The complaint did allege some statements and representations by M&M and Dragos, *see id.*, but there was nothing particularly complex about the scheme as alleged in the complaint.

Similarly, in the Court's prior decision dismissing the complaint, the Court noted that there was a long series of acts alleged to have been taken by the defendants, but they all "had a single goal–the sale of the property to plaintiffs at an inflated price–and a single pair of victims." *Id.* at 571. In short, though many acts were alleged, the alleged scheme was relatively simple and straightforward.

It should also be noted that there was no discovery in this case. Although the case was referred to a magistrate judge for supervision of discovery in February 2010, *see* Dkt. #90, the motions to dismiss were filed shortly thereafter, and the motions to dismiss were based entirely on the complaint. The only issues presented on the motions, then, were legal, not factual in nature. And again, while the complaint was lengthy, ultimately the legal issues presented were not all that novel or complex.

As defendants note (in support of their assertion that it was reasonable to retain out-of-town counsel), SKH was also familiar with these types of claims involving M&M, since SKH represented M&M in similar litigation in California. *See Eclectic Properties East, LLC v. Marcus & Millichap Co.*, No. C-09-00511, 2011 WL 1375164 (N.D.Cal. Apr. 12, 2011); *Eclectic Properties*, 2010 WL 384736 (N.D.Cal. Jan. 29, 2010). While SKH's familiarity with these types of claims may have militated in favor of choosing out-of-town counsel, that also suggests that this case should not have required an enormous expenditure of time to seek and obtain dismissal, particularly since the dismissal was granted based on the face of the complaint, without any discovery.

Counsel also notes that it was necessary to obtain all the M&M defendants' consent to removal, and that some defendants were defunct. Those factors may have necessitated the expenditure of some additional time, but not enough to justify the fee request here. To some extent, those two factors also cut against each other, since a defendant's defunct status obviated the need to obtain its consent to removal. Ultimately, counsel did represent multiple defendants, which does support a more substantial award than if counsel represented a single defendant. But the number of hours claimed here remains excessive for a case that was disposed of in relatively short order.

Also troublesome is the extent to which the M&M defendants' fee request is based on work performed by SKH, from Los Angeles, rather than by LKGC, from Rochester. In *Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir. 2009), the Court of Appeals for the Second Circuit both reaffirmed and clarified the "forum rule," under which "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Id.* at 174 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 119 (2d Cir. 2007) (additional internal quote omitted). "The court may apply an out-of-district rate ... if, 'in calculating the presumptively reasonable fee[,] ... it is clear that a reasonable, paying client would have paid those higher rates.'" *Id.* (quoting *Arbor Hill*, 493 F.3d at 119).

In the case at bar, the hourly rates charged by the four SKH attorneys who worked on this case are $350, $375, $475, and $600 per hour. Dkt. #153-3 at 1. Local counsel, Paul Leclair, a managing partner of LKGC, a Rochester law firm, who has 25 years of experience, including lengthy tenures at the Rochester firms Wolford & Leclair LLP and Nixon Hargrave Devans & Doyle, charged $250 an hour for his services in this case. Dkt. #153-5.[5]

In *Simmons*, the Second Circuit held that

---

[5]Following a merger with Boston-based Peabody & Brown, Nixon Hargrave Devans & Doyle became Nixon Peabody LLP. Wolford & Leclair has dissolved and been succeeded by LKGC and The Wolford Law Firm LLP.

when faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule. In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result.

575 F.3d at 175. The court also made clear that

> [a] litigant cannot overcome the presumption ... by relying on the prestige or "brand name" of her selected counsel. ... The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result.

*Id.* at 176. "Among the ways an applicant may make such a showing," the court stated, "is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise." *Id.* (citation omitted). This rule, the court observed, "encourages litigants to litigate with their own pocketbooks in mind, instead of their opponents'." *Id.*

As stated, SKH had some familiarity with the types of claims advanced here, having represented M&M in a similar case in California. But as *Simmons* explained, the bottom line is what a reasonable client would be expected to pay. If the cost savings resulting from out-of-town counsel's familiarity with the issues are substantially outweighed by out-of-town counsel's far higher hourly rates, then it hardly seems reasonable for a client to agree to use out-of-town counsel, unless doing so would be likely to produce a substantially better result.

I do not find that such a showing has been made here. Despite counsel's protestations to the contrary, this was not an especially complex case; the fact that the complaint was facially deficient, which led to its dismissal without any discovery having been conducted, is some indication of that fact. Local counsel could certainly have handled most if not all of the litigation of this action as effectively as SKH. Other civil RICO actions have been litigated in this Court, *see*, *e.g.*, *Kapner v. Riverside Wine & Liquor, Inc.*, No. 09-CV-6565, 2011 WL 5154608 (W.D.N.Y. Oct. 28, 2011); *Moore v. Guesno*, 485 F.Supp.2d 300 (W.D.N.Y. 2007), including at least one in which Paul Leclair's former firm was involved, *see Eastman Kodak v. Camarata*, No. 05-CV-6384, 2006 WL

3538944 (W.D.N.Y. Dec. 6, 2006). For that matter, Leclair's own declaration submitted in support of the M&M defendants' motion for attorney's fees shows that he has substantial experience in "commercial litigation matters such as this one." *See* Dkt. #153-5, ¶ 2.

Even if it was reasonable for the M&M defendants to retain SKH, the division of labor in this case–nearly five-to-one in favor of SKH–was not justified, particularly given the disparity between the rates charged by counsel from SKH and LKGC. While I do not doubt that the rates charged by SKH are consistent with the prevailing rates for attorneys of similar experience and expertise in Los Angeles, it will likely be many years before Rochester attorneys command hourly rates of $475 and $600 per hour. Again, given the right case, it might well be reasonable for a Rochester-area client to agree to pay such rates, either because of the likelihood of a significantly more favorable result than could be obtained with local counsel, or because of some anticipated cost savings owing to counsel's familiarity with the issues. But this was not such a case.

I also note that both SKH and LKGC appear to have performed significant work on some of the same matters. In late October 2009, for example, SKH's time records reflect a substantial number of hours spent on the M&M defendants' motion to dismiss. Dkt. #153-3 at 14. LKGC's time records show that they billed at least twelve hours for work spent on that same motion. Dkt. #153-5 at 10. The use of two firms always creates the risk of duplication of effort, and that seems to have occurred here.[6]

The Second Circuit has endorsed the use of "across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application." *In re Agent Orange Product Liability Litigation*, 818 F.2d 226, 237-238 (2d Cir. 1987) (internal quotation marks omitted). Such reductions have been employed by this Court. *See*, *e.g.*, *Mendez v. Radec Corp.*, No. 03-CV-6342, 2012 WL 5389138, at *5 (W.D.N.Y. Nov. 1, 2012) (applying "an approximate 70% across the board

---

[6]For example, SKH's time records show numerous entries by Katherine Farkas and other attorneys spent preparing, reviewing and revising defendants' motions to dismiss. Dkt. #153-3 at 13-18. LKGC's records show similar entries on what are apparently the same motions. *See* Dkt. #153-5 at 10, 13, 14.

reduction in the hours expended"); *Carlson v. Geneva City School Dist.*, No. 08-CV-6202, 2012 WL 1664203, at *2 (W.D.N.Y. May 11, 2012) (20% reduction); *Matusick v. Erie County Water Authority*, 774 F.Supp.2d 514, 532 (W.D.N.Y. 2011) (50% reduction).

I also note that the M&M defendants seek fees for time spent in preparing their fee application. Absent statutory or contractual language providing for such fees, however, the law in this circuit is that "a general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves." *Campbell v. Mark Hotel Sponsor, LLC*, No. 09 Civ. 9644, 2012 WL 4360011, at *3 (S.D.N.Y. Sept. 13, 2012) (citing *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1266 (2d Cir. 1987)); *accord Regan v. Conway*, 768 F.Supp.2d 412, 418 (E.D.N.Y. 2011). "Of course, it is possible to contract for such an allowance but, as it is an agreement contrary to what is usual, specific language would be needed to show such an agreement." *F.H. Krear*, 810 F.2d at 1267 (internal quotation marks omitted). The fee-shifting provision here made no mention of fees incurred on the fee motion, and I therefore decline to award fees for such work.

It appears from counsel's time records that SKH spent 40.6 hours in connection with their fee application, *see* Dkt. #153-3 at 22, 23, and that LKGC spent 29.25 hours on the application, *see* Dkt. #153-5 at 22-28. Those hours will therefore be excluded from the M&M defendants' fee award, which reduces the hours claimed to 450.8 for SKH and 72.75 for LKGC.

Based on the M&M defendants' fee request, the average hourly rate sought for work performed by SKH is $380.54. *See* Dkt. #153-3 at 2, ¶ 8.[7] Applying that rate to the 450.8 compensable hours yields a figure of $171,545.27. To account for the excessiveness of that fee request, for the reasons stated above, I will apply an across-the-board reduction of 75 percent. The total amount of the fee award to the M&M defendants for work performed by SKH, then, is

---

[7]SKH attorney Katherine Farkas states in her affidavit (Dkt. #153-3) that SKH seeks recovery for 491.4 attorney hours, and $186,995 in attorney's fees. *Id.* ¶ 8. Dividing the latter amount by the requested hours yields a figure of $380.54 per hour.

$42,886.32. I will make no reduction in the amount of costs claimed, $1132.43, bringing the total award to SKH to $44,018.75.

The average hourly rate sought for work performed by LKGC is $248.49. *See* Dkt. #153-5 at 3, ¶ 6.[8] Applying that rate to the 72.75 compensable hours produces a figure of $18,077.65. While LKGC's hourly rates are not excessive, I conclude that some additional reduction is warranted to account for the duplication of effort between SKH and LKGC. I will therefore apply an additional reduction of 20%, resulting in a total award to LKGC of $14,462.19.

**2. Kunofsky**

Defendant Kunofsky seeks $39,639.61 in attorney's fees and costs, for work performed by his attorneys, Kobre & Kim, a firm based in New York City. *See* Dkt. #154-1 at 3, ¶ 9. The hourly rates sought range from $95 an hour for "litigation assistants," to $275 an hour for "analysts," to $450 and $750 an hour for attorneys. Dkt. #154-1 at 2. The total time for which fees are claimed comes to 98.8 hours, *see* Dkt. #154-2. Excluding the $530.11 in costs, *see* Dkt. #154-2 at 28, 40, 42, Kobre & Kim's average hourly rate comes out to $395.85.

For the same reasons stated with respect to the M&M defendants, I do not believe it was necessary or reasonable to hire out-of-town counsel charging hourly rates as high as $750, which is roughly three times as much as charged by attorneys in this area for similar services. *See*, *e.g.*, *Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400, 413 (W.D.N.Y. 2011) (approving rates of $195 per hour for associates and $250 per hour for partners in FLSA case); *Grievson v. Rochester Psychiatric Center*, 746 F.Supp.2d 454, 463-65 (W.D.N.Y. 2010) (compiling case law from this district setting rates between $175 and $250 per hour depending upon attorney's level of experience); *Disabled Patriots of America, Inc. v. Niagara Group Hotels, LLC*, 688 F.Supp.2d 216, 225 (W.D.N.Y. 2010)

---

[8]That figure includes a relatively minuscule amount of costs totaling roughly $26.

("this Court is unaware of any decision issued ...recently [in this district] in any substantive area in which fees of more than $240 per hour were awarded").

Though I do not find that the hours claimed here were excessive, I also note that Kunofsky's motion to dismiss essentially piggybacked on the M&M defendants' motion. Kunofsky's three-page brief in support of his motion to dismiss stated that "[i]n order to minimize repetitive pleading, promote efficiencies and reduce the Court's burden, Mr. Kunofsky hereby incorporates by reference" the arguments set forth by the M&M defendants in their motion, to the extent that those arguments applied to Kunofsky. Dkt. #41-2 at 2. While that effort to minimize duplicative work is commendable, this further demonstrates that it was not reasonably necessary to hire out-of-town counsel charging the kinds of rates sought here.

Finally, it appears that Kobre & Kim spent 20.5 hours on work related to their fee application. *See* Dkt. #154-2. I will therefore reduce their hours by that figure, resulting in a total of 78.3 compensable hours. I will apply a further reduction to Kobre & Kim's average hourly rate, and use an average rate of $250 per hour, for a fee award to Kunofsky of $19,575, plus $496.61 in costs, bringing the total to $20,071.61.

**3. Scotti**

Defendant Scotti seeks an award of $20,412.50 in attorney's fees, and $838.45 in costs. *See* Dkt. #152. The hourly rates charged by Scotti's attorneys, Hiscock & Barclay ("H&B"), range from $120 for a paralegal and $205 for an associate to $275 for a partner. Scotti's attorneys apparently worked primarily from offices in Syracuse and Buffalo, New York.

Plaintiffs do not appear to challenge those requested hours or rates, and I find that they are reasonable. I do note, however, that based upon the Court's *in camera* review of H&B's unredacted time records, it appears that $4403.50 in fees, and $268.88 in costs were attributable to work on the motion for attorney's fees. *See* Dkt. #152. As stated, such amounts are not compensable, *see*

*Campbell*, 2012 WL 4360011, at *3. I will therefore grant Scotti's motion, but reduce the total award to $16,009 in attorney's fees, and $569.57 in costs, for a total award of $16,578.57.

## CONCLUSION

The motions for attorney's fees and costs filed by defendants Marcus & Millichap Real Estate Investment Brokerage Company, Andrew R. Dorf, Scott Dragos, and Chris Zorbas (Dkt. #132), Glen Kunofsky (Dkt. #133), and Daniel J. Scotti, Jr. (Dkt. #135) are granted in part. Defendants Marcus & Millichap Real Estate Investment Brokerage Company, Andrew R. Dorf, Scott Dragos, and Chris Zorbas are awarded attorney's fees and costs of $44,018.75 for work performed by Scheper Kim & Harris, LLP, and $14,462.19 for work performed by Leclair Korona Giordano Cole LLP, for a total award to those defendants of $58,480.94.

Defendant Glen Kunofsky is awarded attorney's fees and costs in the amount of $20,071.61.

Defendant Daniel J. Scotti, Jr. is awarded attorney's fees and costs in the amount of $16,578.57.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      November 28, 2012.